No. 11,681.

PALMER v. SACKETT, ADMINISTRATOR, ET AL.

Decided June 13, 1927.

Action involving possession of property of a deceased person.   Judgment for defendant on his counterclaim.

*Affirmed.*

1.   APPEAL AND ERROR—*Abstract—Pleadings.*   The abstract of record should contain a brief statement of all the pleadings, and not only such as plaintiff in error thinks should be abstracted.

2.   PLEADING—*Inconsistent Positions.*   A party to an action may not therein, against proper objection, take inconsistent positions or base his cause of action on inconsistent or self destructive grounds.

3.       *Cross-Complaint—Sufficiency.*   Cross-complaint alleging that plaintiff wrongfully took possession of assets of a deceased person and was guilty of fraud and deceit with intent to defraud the administrator and heirs, held to state a cause of action.

4.,   APPEAL AND ERROR—*Sufficiency of Evidence.*   In an action involving possession of assets of a deceased person, evidence reviewed and held to warrant a judgment against plaintiff for the return of property procured from deceased when he was in a helpless condition, and without his consent.

*Error to the District Court of the City and County of Denver, Hon. L. C. Stephenson, Judge.*

Mr. EVERETT BELL, for plaintiff in error.

Messrs. MORRISSEY, MAHONEY & SCOFIELD, Mr. F. R. LILYARD, for defendants in error.

*En Banc.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

THIS action was begun by Lucille Palmer, a colored woman. In her complaint filed in January, 1923, she alleges that one Frank Robertson, of the city of Denver, a white man, died intestate September, 1922, and thereafter the defendant Sackett was appointed administrator of his estate. She further alleges that Robertson died without heirs, though the defendants other than the administrator, nine or more of them, claim to be, but are not, his lawful heirs. The cause of action as pleaded in her complaint is that during the lifetime of Robertson and in the year 1911, he became greatly interested in her and stated that he was possessed of a large estate consisting of both real and personal property; that he had no relative who was interested in him or his welfare; that he had no one to care for him or assist him in the maintenance of his home; and that if plaintiff Palmer would for him perform the usual household duties and stay with him as housekeeper for the remainder of his life and give him the benefit of her companionship and attendance, he would turn over to her, either by will or otherwise, all of his property, ''as he had no one else to leave the same to, but her.'' Plaintiff accepted this proposition and agreed to and did remain with Robertson during the remainder of his life and performed the contractual duties and tasks as housekeeper for the full period of nine years immediately and next preceding his death. She then alleges that in pursuance of such oral agreement, and as a part performance thereof,

Robertson, shortly before his death, endorsed and turned over to her and delivered to her approximately $11,000 in bank certificates of deposit and sent for an attorney to draw and prepare his last will, making the plaintiff his sole legatee and devisee, but before he could execute and acknowledge the will he became so mortally sick that he could not complete the making thereof and died intestate. The complaint then enumerates various items of the personal and real estate of which Robertson died seized and possessed and asks that she be decreed to be the sole owner thereof and that the administrator, defendant Sackett, be directed to turn over to her all of the personal property of the estate, less the expenses of administration, and for other alleged proper relief. Whether the defendants in the action, other than the administrator, were served with process or appeared or filed any pleadings therein we are not advised by the record. The administrator filed an answer traversing the allegations of the complaint and pleading several affirmative defenses, and therein set up, as a counterclaim, that Robertson died intestate and he, the defendant, was appointed as administrator and as such is entitled to the possession of all the real and personal estate of which Robertson died seized and possessed. The administrator then proceeds to set forth the cause of action, upon which final hearing was had and judgment entered, which is that at the time of the death of Robertson he was the owner and holder of five certain certificates of deposit issued by the Farmers State Bank of Boone, Iowa, aggregating about $11,000, each of which bore interest at the rate of 4 per cent per annum from the date thereof, each payable to the order of Robertson; that after Robertson's death, and on or about October 6, 1922, the plaintiff wrongfully took possession of these certificates and thereafter collected from the issuing bank the full amount of the principal of the certificates and the interest thereon; that in such taking possession and sale of the certificates and the collection

of the proceeds the plaintiff was guilty, and is guilty, of wilful malice, fraud and deceit and was actuated by an intent to deceive and defraud the defendant as administrator of Robertson's estate and his lawful heirs; that the defendant administrator has made demand upon the plaintiff to return to him the certificates of deposit or the proceeds, but plaintiff failed and refused to do so. The prayer of the cross-complaint is for a money judgment, for the amount of the proceeds of the sale of the certificates, against the plaintiff and for a body judgment in accordance with the statute in such case made and provided, and that in the event of a default of such payment of judgment on rendition, that the defendant have due execution thereof as by law provided.

A demurrer filed by plaintiff to the answer was withdrawn and thereupon she traversed the affirmative allegations of the answer by her replication. Upon the day set for final hearing the parties waived a jury trial consenting to a hearing by the court. After testimony was heard on the first day and up to the hour of adjournment, the plaintiff then moved for a dismissal of her complaint, which the court granted with prejudice, and the hearing thereafter proceeded on the cross-complaint. The court found all the issues of fact and law for the defendant administrator, awarding him a money judgment against the plaintiff for $13,887.48, the proceeds of the sale of the certificates, and a body judgment against her for the fraud and deceit which she practiced. Plaintiff is here with her writ of error.

We have stated the contents of the complaint, though it was dismissed, chiefly because the plaintiff in error in her abstract of the record neither summarized the same nor afforded us any proper or adequate conception of the full and real nature of this controversy, or what grievance plaintiff's complaint contained. It is true that the final hearing was on the issues joined upon defendant's counterclaim. But this court in reviewing a judgment is entitled to know, and rule 36 of this court re-

quires that the abstract contain a brief statement of the contents of the pleadings, not such of them as the plaintiff in error thinks should be abstracted, but all of the pleadings in the case. Had the defendant in error seasonably moved against this abstract, it would have justified an order requiring a compliance with the rule, or, in lieu thereof, a dismissal of the writ of error for such failure. If for no other reason the complaint should have been summarized because a party to an action may not therein, against proper objection, take inconsistent positions or, otherwise expressed, base his cause of action upon inconsistent and self-destructive grounds. At least some of plaintiff's attorneys in the trial below must have been impressed with this thought, because those of them who filed the complaint (Messrs. Garwood & Garwood, and S. E. Cary), which was verified by the plaintiff Palmer herself, did not sign the replication, which was signed, and verified, by Everett Bell. This change of counsel does not cure the error, even though responsibility for it might not be traced. These are circumstances which throw light upon the peculiar nature of this case and the manner in which it has been handled, and is an additional reason why the contents of the original complaint should have been stated in the abstract of record. We turn now to the specific errors assigned and argued by plaintiff in error.

1. It is said the cross-complaint does not state facts sufficient to constitute a cause of action. We have examined this pleading and find it not subject to plaintiff's criticism. It alleges that at Robertson's death he was the owner of these certificates of deposit; that Sackett was his duly appointed administrator and as such administrator is entitled to the possession of all the property of Robertson's estate for the purpose of administering the same and distributing it to Robertson's lawful heirs, or to such persons as shall justly be entitled thereto after the payment of his debts and obligations and the costs of administration. Describing the certificates

of deposit in question, the cross-complaint says Robertson was the owner and holder thereof; that after his death the plaintiff unlawfully took possession of them and collected, or caused to be collected, from the issuing bank the full amount due thereon and that, in so doing, plaintiff was, and is, guilty of wilful malice, fraud and deceit and was actuated by, and had thereby, the intent to deceive and defraud this defendant as administrator and the lawful heirs of Robertson of such certificates and their proceeds. We think this complaint states a cause of action which, if established, entitles the defendant administrator to a judgment on his cross-complaint against the plaintiff for the proceeds which she received from the sale inasmuch as they had been paid to and received by her. It is possible that a motion to make the cross-complaint more specific or certain might lie but the plaintiff chose to file a general demurrer to the pleading and it was not well taken,—a cause of action was well pleaded.

2. It is also contended that error was committed by the trial court in not sustaining plaintiff's motion for a nonsuit and in not dismissing the cross-complaint. This leads us to a summary of the testimony. This assignment might well be disposed of by the statement that there was abundant, competent, legal and sufficient evidence in behalf of the administrator to sustain every allegation of his cross-complaint. The testimony, as might be expected under such issues, was more or less in conflict. The presiding judge evidently disbelieved all of the evidence introduced in behalf of the plaintiff and believed the witnesses for the administrator and was justified in doing so. The material and only testimony which even tends faintly to show an endorsement and delivery of these certificates to the plaintiff, or that even squints at a gift inter vivos or a gift causa mortis is furnished by one Harry W. Smith, a colored man, and by the plaintiff herself in the county court where, upon a citation to her to appear therein to answer a charge that

she was unlawfully interfering with the property of this estate, she was examined and testified. The plaintiff did not appear at the final trial of this action, although there is evidence in the record that she was in the city of Denver a few days before. The trial court at the close of the evidence said that whatever rights the plaintiff has, if any, rest upon the testimony of the two designated witnesses. Plaintiff, it seems, testified in the county court, or, if not, had sworn in her complaint, that these certificates were delivered to her by Robertson and endorsed by him with his own hand, and the witness Smith said that several days thereafter he was at Robertson's house while the latter was lying sick in bed and that Mrs. Palmer, plaintiff, came into the room with some certificates of deposit in her hand. Smith was unable to identify the certificates that were produced at the trial as being the same certificates that the plaintiff thus produced, but the trial court assumed that the identity was sufficiently shown. Smith testified that the plaintiff, producing the certificates, said to him: "See what Robertson has given to me." Smith then said: "Well he may want you to give them back if he don't die;" Robertson then said: "Not on your tintype. She has them now and they can't cheat her out of it." The trial judge in his findings says that there is no evidence at all that Robertson knew what plaintiff and Smith were talking about, and the certificates were not called to his attention. The court found that the alleged signatures of Robertson on these certificates were and are forgeries and that they were not placed there by Robertson. The court further found that they were not given or delivered to the plaintiff by Robertson, and that they belonged to Robertson at his death, and are part of the property of his estate. The court also found that the plaintiff cashed the certificates or procured them to be cashed, knowing at the time that what purported to be the signatures of Robertson thereon were forgeries, and whether she herself forged the name of Robertson, or

the forgery was by someone else, the plaintiff knew of it and was a party to the crime. The court also specif-. ically found from the testimony that the plaintiff was guilty of fraud with an intent to deceive and injure the estate of Robertson.

We were at first inclined not to enter upon a discussion as to the sufficiency of the proof, or of its nature, because, in our reading of the transcript, we discovered that it was abundantly sufficient to warrant the findings by the trial court. We feel, however, in the interests of justice, and as a warning to those inclined to indulge in similar frauds, that we should make some further statement of the facts. A few days before Robertson's death a call was received from someone at his house by attorney Omar Garwood of Denver and by attorney Cary, who, as attorneys, signed the complaint in this action. Cary has since been disbarred by this court for defrauding his clients. *People, ex rel. Bar Association v. Cary,* 80 Colo. 443, 251 Pac. 597. The call was over the telephone and it was stated to each one that his presence at the home of Robertson, who was ill, was desired for the purpose of preparing his will. Both of the attorneys responded to the call, Garwood being first to reach the Robertson home. Both of these witnesses testified in behalf of the plaintiff. They seem to be in accord that the telephone call could not have come from Robertson because at the time he was so ill as to be unable to execute a will or to make the call, and Mr. Garwood said it might have come from the Palmer woman. She was there when the lawyers arrived and seemed to be in charge. While these witnesses were in the house, an inquiry was made by someone there of Robertson, what he was going to do for Lucille, meaning the plaintiff. Mr. Garwood says that his recollection is that Robertson said either: ''I have taken care of her,'' or, ''I am taking care of her.'' Garwood further says that, having satisfied himself that the man was not in a condition to make a will, no attempt was made to draw it. If that is

true then any statement by Robertson at the time as to any provision that he had made, or intended to make, for the plaintiff would not be of much weight. As to what Robertson said the witnesses are not in accord. A Mrs. Robertson, who is not a relative of the deceased, but who lives next door to him, was present when these two lawyers and others were in Robertson's room, and she says that Robertson's answer to the question was: "I pay Lucille," and she also testifies that someone asked Robertson if he was going to make a will and he spoke as loud as he could: "No." This statement: "I pay Lucille," harmonizes with Mrs. Robertson's further testimony that Robertson told her he paid Lucille $2.00 a day for two days each week for cleaning house.

The testimony of Henry Smith is chiefly relied upon by the plaintiff. He testifies that he had known the plaintiff Palmer for a number of years, about thirty, that they were intimate friends before either of them lived in Denver; each one referred to the other as cousin, although they are not related by blood so far as either of them knows, although Smith testifies that the plaintiff believed that their respective fathers were brothers in slavery days, but no definite knowledge of the relationship is available. Smith testified that for about one year he "roomed" with the plaintiff in her own home during a part of the nine year period during which she says in her complaint she continuously spent in Robertson's home caring for him. He does not dwell upon that statement or explain exactly what he means by it, but it is certain that his relations with her were of that unsavory character which he intended by this statement to convey. He evidently was desirous of furnishing all the support he possibly could to the claim of the plaintiff to Robertson's property, and said that Robertson had frequently expressed his fondness for her, and intended to make some provision for her support after his death. Nothing tangible, however, is revealed by any of the witnesses upon which any conclusion could rightfully

be drawn that such was Robertson's purpose. In her complaint, which she herself verified, plaintiff says that the condition, upon which the promise of Robertson to give to her all of his property was made, was that she should live with him as housekeeper and care for him as such during the remainder of his life, and she says that she complied with the condition by doing so. The trial court must have deemed all of her testimony worthless and accepted that of Mrs. Robertson already referred to, that the plaintiff did not live with Robertson or conduct his household as she alleges in her complaint. As matter of fact she lived in her own home in another part of the city during the nine years which she claims in her complaint she continuously lived with Robertson.

The foregoing are some of the high lights in this testimony. Cary, one of the plaintiff's attorneys who, however, did not appear in that capacity at the time of the trial, gave testimony tending to establish the claim which the plaintiff made in her complaint that Robertson intended to make some provision for plaintiff's support. It is of an indefinite and uncertain nature and given in such a way and in such circumstances that the court was justified in disbelieving the witness. The testimony was amply sufficient to support the judgment. There was no error in overruling the motion for nonsuit or for a dismissal of the counterclaim.

There is no statement in any of plaintiff's pleadings that there was a completed gift to her by Robertson during his lifetime as a gift inter vivos, or that she obtained possession of the certificates as a gift causa mortis. Indeed, plaintiff herself testifies in the county court that at the time the certificates were given to her by Robertson he was in good health and not sick at all and voluntarily endorsed over to her the certificates as a part performance of the oral contract of service. This is inconsistent with the claim set forth in the briefs here that the gift was a valid, completed gift of the nature already asserted. It is significant that the plaintiff her-

self did not appear at the trial to give testimony, although theretofore in the county court she claimed the right to the certificates under an oral contract of service. Possibly that was one reason why she did not deem it wise to be present at the trial to assert a right to property as a mere gift of either kind referred to.

Rarely, if ever, have we found a record so redolent of wilful fraud and deceit. It is evident that plaintiff deliberately planned to obtain possession and ownership of the estate of her employer at all hazards, and by any means, fair or foul, which she could devise or employ, or which could be devised or suggested to her by others. We conclude, chiefly to show her contradictions and inconsistencies, with the observation that in plaintiff's testimony in the county court it appears that she then stated specificaly that she did not know why Robertson turned these certificates of deposit over to her and that he merely said that he wanted her to have them. We might comment upon some other, and unusual, features of this case; but we are convinced that enough has been stated to demonstrate that the trial court correctly ascertained the facts, as they are, and awarded the proper relief for an iniquitous attempt to despoil Robertson's heirs of their inheritance. No prejudicial error of law was committed by the trial court and the facts before it called for and warrant the judgment, which is accordingly affirmed.