## No. 16,309.

### WIGTON v. McKINLEY ET AL.
(221 P. [2d] 383)

Decided May 22, 1950.   Rehearing denied July 17, 1950.

Mr. V. G. SEAVY, for plaintiff in error.

Mr. SAM T. TAYLOR, for defendants in error.

*En Banc.*

MR. JUSTICE STONE delivered the opinion of the court.

ON September 5, 1946, defendants in error, as plaintiffs, filed their complaint for determination of interests and quieting title in them to lands therein described, joining numerous parties defendant, including Bessie

Wigton, and all unknown persons who claimed any interest in such lands. May 7, 1947, default was entered against all defendants except Bessie Wigton, who had appeared by motion on September 28, 1946, and had thereafter been given until May 16, 1947, in which to further plead. May 16, plaintiff in error filed an answer in the cause alleging that prior to November 12, 1946, the date of the death of Bessie Wigton, the latter was the owner of certain described land, being a portion of the realty involved in this suit, and further alleging, "That prior to her death the said Bessie Wigton had made, executed and delivered to the said W. I. Wigton a deed conveying to him the above described real property and that said deed is now of record in the office of the Clerk and Recorder of Huerfano County, Colorado," and "That the said W. I. Wigton is now the owner of said property and is the proper defendant to carry on the above entitled litigation in the place and stead of Bessie Wigton;" also making sundry denials and allegations in defense to the cause of action set out in the complaint.

July 11, 1947, plaintiffs filed motion to "dismiss" the answer of W. I. Wigton on the ground, among others, that default had been entered prior to the answer, and that W. I. Wigton was well acquainted with the entire proceeding from its inception. It appears elsewhere from the record that W. I. Wigton was the husband of Bessie Wigton and well acquainted with the bringing of the suit, and the basis of plaintiffs' asserted title, since September 14, 1946, when summons therein was served on Bessie Wigton. On the date of the filing of said motion, it was heard by the court without objection. Evidence was submitted by both parties at the hearing and the attorney for plaintiff in error testified that Bessie Wigton died testate; that her will was admitted to probate in Pueblo county on February 24, 1947, and that prior to May 16, 1947, the will was construed by the County Court of Pueblo County as making an absolute conveyance of the property involved in this suit to her

husband, W. I. Wigton; that on July 22, 1922, Bessie Wigton had made and executed a special warranty deed purporting to convey said property to W. I. Wigton, which was recorded January 17, 1947, and that he had knowledge of the filing of the action from the time his wife was served with summons therein.

November 14, 1947, plaintiff in error, W. I. Wigton, filed a motion to set aside the default judgment, if said judgment included him, and then filed a second answer alleging ownership of the involved property by Bessie Wigton when the suit was commenced; failure to make delivery of the deed executed by her purporting to convey said property to plaintiff in error; her death testate; admission of her will to probate; construction of said will by the County Court as an absolute conveyance of said property to W. I. Wigton, and other matters which were set up in defense to the allegations of plaintiffs' complaint.

Thereafter a supplemental decree was entered by the court reciting, among other things, knowledge of the suit and issue involved by plaintiff in error from the date of service of summons on Bessie Wigton on September 14, 1946; the service of summons by publication; that such service was complete on January 24, 1947, and default duly entered on May 7, 1947; that plaintiff in error failed to appear within the statutory time, that he had been lawfully served with summons; that the time within which to answer had expired prior to the time of the filing of his answer, and that default had been properly entered against him. Pursuant to said recital the court ordered that the motion to file answer be denied, and decreed that plaintiffs' title be quieted as against all interest of plaintiff in error.

Reversal is here sought on specifications that the court erred in holding that default had been entered against plaintiff in error; in refusing to set aside such alleged default; in refusing to permit him to file his tendered answer, and in entering the supplemental decree.

■ In preparing the brief of plaintiff in error, counsel has ignored substantial requirements of our rules of procedure, particularly in that there is no adequate subject index; no separate or particular statement of any point intended to be argued, no summary of the argument, and no clear and separate statement of the points of fact and law upon which he relies. Observance of the rules is not only of assistance to the court, but may well clarify the thinking and argument of counsel. Their flagrant violation here might well justify affirmance of the judgment without further consideration.

■ Under the issues here made, we do not deem it necessary to consider whether or not plaintiff in error in his answer set up an adequate defense, or concern ourselves with the considerable discussion of that question in the brief. By his answer, filed on May 16, 1947, plaintiff in error alleged that prior to her death Bessie Wigton had made, executed and delivered to him a deed conveying to him the property involved, and that he was then the owner thereof. It is undisputed that the deed, by virtue of which he there claimed ownership, was dated July 22, 1922. In the absence of other showing in that answer, the deed must be presumed to have been delivered on its date; therefore, the title and interest asserted by plaintiff in error in his answer vested in him prior to the commencement of the action, and since his deed was not recorded until January 17, 1947, he was, at the time of the commencement of the suit, an unknown party claiming an interest in said land and, as such, was properly served by publication of summons. The subsequent recording of his deed did not change his status. Such publication of summons became complete, and his time to answer expired, on February 25, 1947, default was duly taken against all unknown defendants on May 7, 1947, and that default included him. From the record, it appears to be undisputed that plaintiff in error had full knowledge of the issues involved in the action and of the bringing of the suit, from the date of the service of the

18

summons upon his wife Bessie Wigton on September 14, 1946, and in view of his full knowledge of the proceedings and the absence of good cause shown, we can find no abuse of discretion on the part of the trial court in refusing to set aside the default so entered against him as an unknown defendant, and in striking his first answer.

There remains for consideration the second answer filed some six months later, following the motion to dismiss the first answer. Therein plaintiff in error denied the essential facts solemnly asserted in his former answer and alleged the ownership by Bessie Wigton when suit was brought, the failure of delivery of the deed executed by her upon which he had formerly based his title, her subsequent death, and the devise of the property to him by her will.

Plaintiff in error filed his first answer just ten days after the date of construction of the will of Bessie Wigton, by which his ownership was finally determined, as he now alleges; yet, with full and immediate knowledge thereof, he made no claim in his first answer of title by devise, and no reference to, or mention of, said will, but asserted title solely and positively by virtue of the prior deed to him from Bessie Wigton. Not until six months thereafter, when it became apparent that he had been too late in making his appearance in the pending suit, as a grantee of Bessie Wigton, did he attempt to set up another and inconsistent source of title, and deny the facts solemnly set forth in his prior answer. This was done without any showing of excuse or reason for misstatement or misunderstanding of the facts set out therein or even of their legal effect. A party to an action may not base his cause upon inconsistent and self-destructive grounds. *Palmer v. Sackett,* 82 Colo. 61, 256 Pac. 1093. We are of the opinion that by his first answer plaintiff in error was estopped to deny the delivery and effect of the deed under which he had there asserted title. Accordingly, we hold that the trial court

properly acted within its discretion in striking the subsequently tendered answer and entering judgment in behalf of defendants in error on the default.

The judgment is affirmed.

MR. CHIEF JUSTICE HILLIARD, MR. JUSTICE HAYS and MR. JUSTICE HOLLAND dissent.

MR. CHIEF JUSTICE HILLIARD dissenting.

By complaint filed September 5, 1946, in Huerfano county district court, plaintiffs, who, as the record shows, claimed pursuant to a tax deed, sought to have interests in lands determined and titles quieted. There were many defendants, besides "unknown persons," and a large acreage of land was involved. Among the defendants was Bessie Wigton, who was personnally served with summons September 14, 1946, by the sheriff in Pueblo county. September 28, 1946, Mrs. Wigton filed a motion for severance, for that, as stated, of the lands described in the complaint she was interested only in the south-west quarter of the north-east quarter, the north-west quarter of the south-east quarter, the south half of the north-west quarter, and the south-west quarter, section twenty-six, township twenty-six, south, range sixty-four, west, and that none of the other defendants has any interest therein. May 1, 1947, plaintiffs filed a formal consent to defendant Wigton's motion, and prayed "that the court so order." Proceeding the same day, the court, reciting plaintiffs' consent, ordered a "severance as to the defendant Bessie Wigton, * * *, and that said defendant be granted fifteen days from this date to further plead." May 7, 1947, plaintiffs filed praecipe for "default of all defendants except defendant Bessie Wigton," and immediately an order in conformity therewith was entered by the court. May 16, 1947, and within the fifteen day period fixed by the court within which defendant Bessie Wigton might plead, plaintiff in error, her surviving husband, voluntarily appearing in

20

substitution, answered and alleged that November 12, 1946, when his wife departed this life, she was the owner of "that part of the real property in the complaint described [set forth above]." He further alleged that by virtue of a deed of conveyance made, executed and delivered to him by his wife prior to her death she had conveyed said property to him, and that he is "now entitled to carry on the above entitled litigation in the place and stead of Bessie Wigton." He formally denied the allegations in the first paragraph of plaintiffs' complaint, which were to the effect that they owned and were in possession of the said real estate, etc., but admitted that at the time of the filing of the complaint Bessie Wigton claimed an interest in said land, as plaintiffs had alleged. Further answering, he alleged that December 21, 1933, Bessie Wigton was the record owner of said property, on which date it was sold for nonpayment of taxes for the year 1934, and that she was such owner in May, 1943, when, in relation thereto, the county treasurer ran the advertisement of a "Notice of purchase of real estate at tax sale and application for issuance of treasurer's deed." He then set forth the advertisement, which was to the effect that unless there shall have been redemption from said sale prior thereto, a "tax deed will be issued for said real estate to the said Homer McKinley [one of plaintiffs] on the 3rd day of September, A. D. 1943." Calling attention to the fact that in the said published notice there was no mention made of the number of the section in which the land being advertised was situate, he further alleged, "That no copy of said notice was ever, in any manner, served upon the said Bessie Wigton, and that said notice is wholly insufficient under the statute in such case made and provided." By reason whereof, he alleged that the tax deed of plaintiffs' reliance "is wholly void and without force or effect," and prayed accordingly. May 12, 1947, the court, proceeding at the instance of plaintiffs, and in due form, entered a decree in favor of plaintiffs

and against all defendants except "Bessie Wigton," who was specially excluded, and as to all land involved except that described above, in which, as the decree recites, "Bessie Wigton claims an interest, * * *, which claim has not been determined."

July 11, 1947, plaintiffs filed a motion (heard the same day) to dismiss the answer of W. I. Wigton, for that, as stated, "1. That said W. I. Wigton has failed to pay or to tender to the plaintiffs the amount of taxes due on the property involved herein. 2. That, to-wit, on May 7, 1947, the court entered its order and default judgment against all defendants except the defendant Bessie Wigton; that the said W. I. Wigton knew and was well acquainted with this entire proceeding from its inception, but failed to plead to the complaint herein, prior to the expiration of statutory time granted a defendant to plead."

In the course of the hearing on the motion, evidence was received from which it appears that, previous to the institution of the instant action, plaintiff Homer McKinley and W. I. Wigton carried on correspondence in relation to the land involved, and that Wigton had advised that his wife owned the land, which, as the record indicated, was true, and the wife, not the husband, was made defendant. There was evidence that Wigton and his wife each owned considerable land, and that it had been their practice to make and acknowledge deeds from one to the other, and that such deeds were "kept in a large safe in their place of business to which each had access." It further appeared that in February, 1947, counsel for Mrs. Wigton herein, until her death, and since then for Mr. Wigton, plaintiff in error, wrote counsel for plaintiffs of the death of Mrs. Wigton, and stated to him that, "Bessie Wigton had left a will in which W. I. Wigton was the sole beneficiary and that I thought such will would be admitted to probate on February 24, 1947, and that thereafter a substitution, made necessary by the death of Bessie Wigton, would be made." It was

freely admitted in behalf of W. I. Wigton that he knew of plaintiffs' claim in virtue of a tax deed, and that he knew of the action brought against his wife in relation thereto.

In the oral argument by counsel for plaintiffs, and by his brief as well, the contention was advanced, that W. I. Wigton, although not made a defendant, should, nevertheless, be regarded as an "unknown defendant" upon whom publication of summons sufficed for service; hence, as further emphasized in behalf of plaintiffs, the order of default included W. I. Wigton, and therefore his answer of May 16, 1947, was untimely, etc. Notwithstanding the full oral and written presentation of the motion submitted July 11, 1947, it has never been determined.

In the meantime, and on, to wit, November 14, 1947, counsel for W. I. Wigton, taking note of the contention that his client should be regarded as an "unknown defendant" and of the unknown defendants against whom default had been entered, and mindful as well of the doubt obtaining relative to the delivery of the deed of his reliance in his answer to which the undetermined motion was addressed, filed a motion predicated on the theory, although not specifically adjudged by the court, "that if a default judgment has been entered against him that the same be set aside and he be permitted to file the answer tendered herewith." The tendered answer reads as follows:

"MABEL McKINLEY and
 HOMER McKINLEY,
          Plaintiffs,

          v.                    Answer

W. I. WIGTON, substituted
for BESSIE WIGTON, et al,
          Defendants.

"Comes now W. I. Wigton and respectfully shows the Court:

"1. That at the time of the filing of the complaint

herein, the defendant Bessie Wigton was the owner of that part of the real property in the complaint described as:

"The Southwest Quarter (SW ¼) of the Northeast Quarter (NE ¼) and the Northwest Quarter (NW ¼) of the Southeast Quarter (SE ¼) and the South Half (S½) of the Northwest Quarter (NW ¼) and the Southwest Quarter (SW ¼) of Section Twenty-six (26), Township Twenty-six (26), South of Range Sixty-four (64) West, lying, being and situate in the County of Huerfano and State of Colorado.

"2. That prior to her death, the said Bessie Wigton had executed a deed purporting to convey the above described real property to W. I. Wigton; said deed was never delivered to W. I. Wigton, but was always kept in a safe in his office, to which said safe the said Bessie Wigton had equal access with W. I. Wigton; that the said Bessie Wigton died on November 12, 1946, leaving a last will and testament which was admitted to probate in the County Court of Pueblo County, Colorado, and on May 6, 1947, construed by the Judge of said Court as being an absolute conveyance of all the property of Bessie Wigton to W. I. Wigton;

"3. That on January 17, 1947, W. I. Wigton filed the above mentioned deed in the office of the County Clerk and Recorder of Huerfano, County, Colorado.

"4. That the said Bessie Wigton died leaving Five (5) children as her heirs at law, in addition to W. I. Wigton, her husband, and that said children would have been entitled to inherit from her, except for the order of the County Court of Pueblo County, hereinbefore referred to, construing her said will as an absolute conveyance to W. I. Wigton, and for a first and further answer herein, the said W. I. Wigton says:

"1. That he denies each and every allegation contained in Paragraph One (1) of said complaint.

"2. Admits that at the time of the filing of the Com-

plaint herein, the said Bessie Wigton claimed an interest in the:

"Southwest Quarter (SW ¼) of the Northeast Quarter (NE ¼) the Northwest Quarter (NW ¼) of the Southeast Quarter (SE ¼) the South Half (S½) of the Northwest Quarter (NW ¼) the Southwest Quarter (SW ¼) of Section Twenty-six (26) Township Twenty-six (26) South of Range Sixty-four (64) West of the Sixth Principal Meridian, lying, being and situate in the County of Huerfano, State of Colorado.

"3. Denies each and every other allegation in said complaint contained.

"And for a second, further and separate answer, the said defendant, W. I. Wigton, alleges:

"1. That on December 21st, 1935, and on May 12th, 19th and 26th, 1943, Bessie Wigton was the record owner of the real property hereinbefore described, and that on December 21, 1935, the said property was allegedly sold for non-payment of taxes.

"2. That on May 12th, 19th, and 26th, 1943, an advertisement in the following words and figures was run by the then Treasurer of Huerfano County, Colorado:

" 'Notice of purchase of real estate at tax sale and of application for issuance of Treasurer's Deed.'

" 'To every person in actual possesion or occupancy of the hereinafter described land, lot or premises, and to the person in whose name the same was taxed or specially assessed, and to all persons having an interest or title of record in or to the same, and to whom it may concern, and more especially to Charles Burlingame.'

" 'You and each of you are hereby notified that on the 21st day of December, A. D. 1935, the then County Treasurer of the County of Huerfano, in the State of Colorado, sold at public sale to Huerfano County the following described real estate situate in the County of Huerfano and the State of Colorado, to-wit:'

" 'The Southwest Quarter of the Northeast Quarter

(SW¼ NE ¼) the Northwest Quarter of the Southeast Quarter (NW¼ SE ¼), the South Half of the Northwest Quarter (S½ NW¼) and the Southwest Quarter (SW ¼) all in Township Twenty-six (26) South of Range Sixty-four, (64), West of the Sixth (6th) Principal Meridian.'

" 'The said tax sale was made to satisfy the delinquent taxes assessed against said real estate for the year 1934;'

" 'The said real estate was taxed in the name of Charles Burlingame for the said year 1934.'

" 'That a Tax Deed Will be issued for said real estate to the same Homer McKinley on the 3rd day of September A. D. 1943, unless the same has been redeemed.'

" 'Witness may hand this 11th day of May A. D. 1943.'

" 'Edward Slates, County Treasurer of Huerfano County.'

"3. That no copy of said notice was ever, in any manner, served upon the said Bessie Wigton, and that said notice is wholly insufficient under the statute in such case made and provided.

"4. That prior to her death November 12, 1946, the said Bessie Wigton executed a deed to said property which said deed was not delivered prior to her death, but is now a matter of record in the office of the County Clerk and Recorder of Huerfano County, Colorado.

"5. On September 7, 1943, under and by virtue of the advertisement hereinbefore set forth, a Treasurer's Deed purporting and pretending to convey:

"The Southwest Quarter (SW ¼) of the Northeast Quarter (NE ¼) and the Northwest Quarter (NW ¼) of the Southeast Quarter (SE ¼) and the South Half (S½) of the Northwest Quarter (NW ¼) and the Southwest Quarter (SW ¼) of Section Twenty-six (26), in Township Twenty-six (26), South of Range Sixty-four (64) West of the 6th Principal Meridian, lying and being in Huerfano County, Colorado, to Homer Mc-Kinley was issued.

"4. That by reason of the matters and things herein set forth the said deed is wholly void and without force or effect.

"Wherefore, the said W. I. Wigton prays that he be substituted as a party defendant herein for Bessie Wigton; that plaintiffs take nothing by their complaint and that the Treasurer's Deed upon which they rely be declared null and void and of no force and effect.
Address of W. I. Wigton:
Pueblo, Colorado

> V. G. Seavy
> Attorney for W. I. Wigton
> 322 Thatcher Building
> Pueblo, Colorado."

From November 14, 1947, the day of the filing by W. I. Wigton of the motion to set aside the default—assuming there was such an order as against him—and for leave to file answer, nothing was done in the matter until July 19, 1948, when the court, evidently proceeding on its own motion, and reciting the hearing on the motion to dismiss the first answer of W. I. Wigton, held July 11, 1947, and which, as already appears, was submitted for determination, but never determined, and ignoring Mr. Wigton's motion to set aside entry of default as against him as an "unknown defendant," and for leave to file an answer in the circumstances already stated, which was tendered with the motion, entered its "Supplemental Decree." Not therein or then, or in any other order at any time, did the court determine the motion of plaintiffs to dismiss W. I. Wigton's first answer to their complaint, nor did it otherwise determine or adjudge as to the legal sufficiency of said answer. Likewise, the sufficiency of the tendered second answer, not denied or challenged in any manner, was never determined below, and the court here does "not deem it necessary to consider whether or not plaintiff in error in his answer set up an adequate defense."

The term "Supplement Decree," in the circumstances

here, it is pertinent to observe, is a misnomer. It is the only decree as to the Wigtons or concerning the land, which, subject to the claim of plaintiffs, challenged as indicated, belonged to Bessie Wigton until her death, and in relation thereto she was never in default. The decree originally entered pertained to other lands and other defendants, Mrs. Wigton and her land being expressly excepted therefrom.

As already observed, Mrs. Wigton, proceeding with commendable diligence, filed a motion for severance within fourteen days from the time of service of summons on her. For some eight months plaintiffs permitted the matter to rest, when, although apprised of Mrs. Wigton's death, filed consent to the severance asked for in her motion, and the court ordered in accordance therewith. The foregoing is not emphasized on the theory that illegality attended the order of severance. On the contrary, in the circumstances appearing, the action is one which may be continued against the original defendant notwithstanding her death, or there may be substitution. Usually, substitution is regarded as preferable, and under the rule "may be made by the trial court, either before or after judgment, and by the supreme court in proceedings on writ of error." Rule 25, R.C.P. Colo. In short, as seems clear, once an action of the nature here has been begun, and the owner of the fee title has been served, and, particularly, has appeared, as here, the court properly proceeded to consider and determine the deceased defendant's motion for severance, a process made easy by confession of the motion by plaintiffs. Nothing pertaining to the merits of the controversy was involved in the motion or the order thereon. All that was contemplated thereby was to segregate the land claimed by Mrs. Wigton, in which none of the other defendants was interested, and to facilitate plaintiffs' desire to proceed immediately against the other defendants, defaulted, and as to the other lands involved, of which they made early avail.

Although in the order made in disposition of Mrs. Wigton's motion for severance, as already mentioned, the court gave her fifteen days in which to plead further, in the nature of things, further pleading at the direct instance of Mrs. Wigton was not possible. But her husband, pleading ownership in himself, alleged that in the notice of demand for tax deed, the county treasurer had not adequately described the land in particulars already stated, the most important failure being that the number of the section in which the land was located was omitted from the notice. See, '47 Cum. Supp. '35 C.S.A., c. 142, §255.

By point one of the motion of plaintiffs to dismiss the first answer of W. I. Wigton in the action, it is contended that he "has failed to pay or tender to the plaintiffs the amount of taxes due on the property involved herein." As Justice Campbell said in *Whitehead v. Callahan*, 44 Colo. 396, 99 Pac. 57, "There is no law in this state which requires any such tender." On the contrary, that feature of an action, in which the tax title is defeated, is cared for negatively by a conditionally worded decree therein. *Whitehead v. Callahan, supra.* Point two of the motion is predicated on the claim that since default entered May 7, 1947, was "against all defendants except the defendant Bessie Wigton," her surviving husband, plaintiff in error, stood barred as an unknown defendant.

On no reasonable hypothesis, as I think, may he be so regarded and denied the right to urge the weakness of the tax title involved. Nor, as seems clear, did the order of default entered by the trial court contemplate any such result. The order of default not only excepted Bessie Wigton therefrom, but the land which was claimed by her also was specifically excepted. Re-emphasizing the fact that Bessie Wigton was prompt in her appearance in the case, it is significant that in the order made sustaining her motion for severance, etc., the court allowed fifteen days for further pleading by her. Within

that time, plaintiff in error, as the surviving husband, filed the answer which plaintiffs would have stricken. In short, in so far as the land owned by Bessie Wigton is concerned, she was never in default while living, and within the time prescribed therefor, answer was filed in the interest of the same land, and in which the weakness of the tax title was raised. The rule relative to survivorship (25 R.C.P. Colo.) provides for the continuance in the name of a deceased party, or it may be by substitution. In any event, it was not the intention that the trial court should shut its eyes to information concerning the weakness of the tax title involved, regardless of how and by whom there were allegations to such effect. The surviving husband may have been, and at the time he filed the challenged answer likely was, in error as to his ownership of the land, due wholly to the fact that the deed of his reliance had not been delivered. But at that juncture in the litigation, the admitted fee owner of the land involved being deceased, the identity of the party making answer to the action to the effect that the tax title was void, was only incidentally important, rather what he pleaded was the prime thing. The court's concern was of, and relating to, the legality of plaintiffs' tax title. In this connection, it is important to note, it was not until the argument was had on plaintiffs' motion to strike the answer interposed by the husband, that he was to be considered as an "unknown defendant," and stand precluded by a general default order, was suggested. But upon being apprised of that contention, he sought leave to file an answer in his right as devisee of the land involved, as had been adjudged in the probate of his wife's will. In that tendered answer, his title to the land in succession to his late wife, he pleaded the weaknesses of the tax title, substantially as in his first answer. The trial court would not permit the filing of the second answer. And thus the court, emphasizing what it regarded as procedural shortcomings of the surviving husband, dis-

30

dained consideration of the merits of the case. There was before the court ample challenge of the tax title, and by the one who in the nature of things would be expected to apprise the court thereof, that is to say, the surviving husband of the deceased owner, who, although she had appeared in the case, had not answered, and had departed this life. And, as already stated, in the tendered answer, filing of which was denied, any weakness in his first answer, not attending, as I think, was made amply to appear. The inconsistencies as to the genesis of the surviving husband's title, arising out of the lack of delivery of the deed in the first instance, was not venal, and there is no claim that thereby plaintiffs were misled to their injury. In such situation they may not successfully complain. *National Bank v. Hotchkiss*, 49 Colo. 593, 114 Pac. 310. The chain in detail of the husband's title is not the question, rather, considering all the instruments of his reliance, the legal inquiry is, Had he succeeded to the title of his wife, originally defendant in the action, and concededly the owner of the land until her death? Doubt does not attend. If the two answers are thought to be inconsistent, not obtaining, as I think, and not fatal in any event, it is not something of which the tax title holders may complain. The problem has to do with the alleged weakness of their title, not the identity of the holder of the fee title. It is clear that plaintiffs know that plaintiff in error is the fee holder, and it is even more apparent that they do not wish to have their tax title subjected to judicial scrutiny on the basis of the challenge interposed by such owner.

The judgment should be reversed, the motion to strike the first answer should be denied, the tendered answer should be filed, with leave to plaintiffs to file replication to each of the answers, and when the case is at issue, the court should proceed to the trial thereof, and find and adjudge as advised.

MR. JUSTICE HAYS concurs in this opinion.