**BENDIX-WESTINGHOUSE AUTOMOTIVE AIR BRAKE COMPANY,**
Plaintiff,

v.

**LATROBE DIE CASTING COMPANY,**
Defendant.

**Civ. A. No. C–4111.**

United States District Court,
D. Colorado.

Oct. 1, 1976.

Thomas H. Barrows, Weller, Friedrich, Hickisch & Hazlitt, Denver, Colo., for plaintiff.

Kenneth C. Groves, Denver, Colo., for defendant.

MEMORANDUM OPINION AND ORDER

SHERMAN G. FINESILVER, Judge.

I

STATE PROCEEDINGS

This is an action for indemnification arising out of a judgment recovered in the state courts of Colorado, *Bradford v. Bendix-Westinghouse Auto. Air Brake Co.,* 33

Colo.App. 99, 517 P.2d 406 (1973), *cert. denied* January 14, 1974. The state suit was a products liability case arising out of the failure of an air brake apparatus assembled by Bendix-Westinghouse Automotive Air Brake Co. [Bendix], a Delaware corporation. The brake assembly was part of the original equipment in a 1955 Mack Truck owned and operated by Christensen Brothers Trucking and Excavating Co. [Christensen]. In 1969, the brake failed when applied, and the loaded truck struck Mrs. Bradford's automobile, injuring her. Mrs. Bradford sued Bendix. The trial judge instructed the jury on two theories: strict liability and negligence. The jury returned a general verdict of $58,-000 against Bendix. Bendix's Third-party Complaint against Christensen was dismissed. The Colorado Court of Appeals affirmed. *Bradford v. Bendix, supra.*

## II

### BENDIX'S CLAIM

In this action, Bendix is attempting to obtain indemnification from the Latrobe Die Casting Co. [Latrobe], a Pennsylvania corporation, which manufactured the base of the brake assembly. Bendix asserts that the accident was primarily caused by a "cold shut" in the right ear of the assembly base. A "cold shut" is a spot in the metal which does not properly fuse during the casting process.

In order to determine whether Latrobe has a duty of indemnification to Bendix, it was necessary for us to retry substantially all the products liability issues, including expert and other testimony, inherent in the prior state action.

We find that Bendix has not established that the "cold shut" was the primary cause of the accident. Therefore, Bendix is not entitled to indemnification from Latrobe.

## III

### ACCIDENT CAUSATION

As graphically described in *Bradford v. Bendix, supra,* the brake assembly consists of four parts: pedal, base, fulcrum pin (which fits through both ears of the base and holds the pedal to the base), and the cotter pin (which fits through the left ear of the assembly and holds the fulcrum pin in place). The evidence establishes, as it did in state court, that several mechanical failures caused the pedal to become detached from the base, rendering the assembly inoperative. Through improper maintenance, the fulcrum pin was inserted backwards through the ears of the base, and the cotter pin was not replaced. With nothing to prevent lateral movement of the fulcrum pin, it became disengaged from the left ear of the base. The ordinary and necessary application of the brake pedal by the truck driver consequently exerted great pressure upon the right ear of the base. The presence of the "cold shut" had already weakened the base by approximately twenty percent. The right ear fractured through the "cold shut," and the fulcrum pin became totally disengaged from the base.

## IV

### INDEMNIFICATION AMONG JOINT TORTFEASORS

Narrowly stated, the pivotal issue in this suit is whether the presence of the "cold shut" was the "primary and proximate" cause of the breakdown of the assembly. *Jacobson v. Dahlberg,* 171 Colo. 42, 464 P.2d 298 (1970). In a peripheral holding, the Colorado Court of Appeals in *Bradford* affirmed the dismissal of Bendix's indemnification claim against Christensen, apparently on the ground that Christensen owed a different type of duty to Mrs. Bradford than that owed by Bendix. *Bradford,* 517 P.2d at 415. The state court suggested, however, that an assembler (Bendix) may be entitled to indemnification by a manufacturer (Latrobe) that supplied it with a defective part. *Id.* In this situation, where the duties running to the injured party are similar, the difference between primary and secondary liability depends on the degree of fault. This is pre-eminently a factual determination. *Bass v. United States,* 379 F.Supp. 1208 (D.Colo.1974); *Zimmerman v. Baca,* 346 F.Supp. 172 (D.Colo.1972); *Great American Ins. Co. v. "Quick-Way" Shovel*

Co., 204 F.Supp. 847 (D.Colo.1962); Bradford, supra; Jacobson v. Dahlberg, supra; Parrish v. DeRemer, 117 Colo. 256, 187 P.2d 597 (1948); Colo. & S. Ry. Co. v. Western Light & Power Co., 73 Colo. 107, 214 P. 30 (1923). Despite Colorado's comparative negligence statute, there is no right of contribution among joint tortfeasors. Bass, supra; Zimmerman, supra; Bradford, supra.

## V

### STATUTE OF LIMITATIONS

 Latrobe contends that Bendix is barred by the statute of limitations from bringing this action for indemnification, because the statute began to run in the mid-1950's, when Bendix discovered that there were "cold shuts" in the pedal bases. Latrobe argues that Bendix ought to have brought an anticipatory action for indemnification at that time, and that Bendix would have been barred from obtaining indemnification from Latrobe even in 1969, when the accident occurred. We disagree.

A cause of action for indemnification arises when the original judgment is paid by the indemnitee. Fruehauf Trailer Co. v. Gilmore, 167 F.2d 324 (10th Cir. 1948); Francosteel Corp. v. S. S. Tien Cheung, 375 F.Supp. 794 (S.D.N.Y.1973); Fidelity and Casualty Co. of N. Y. v. J. A. Jones Construction Co., 200 F.Supp. 264 (E.D.Ark. 1962), aff'd. 325 F.2d 605 (8th Cir. 1963). We feel it was not reasonable for Bendix to anticipate that an accident would result from the presence of such "cold shuts," considering the substantial margin of safety that remained. See section VII, infra. In the absence of other mechanical failures, the accident that occurred here was not reasonably foreseeable. If an assembler or distributor were forced to bring a declaratory suit for indemnification against the parts supplier years in advance of any accident, the courts would be needlessly flooded with actions for contingencies that might never occur. It is also significant that Bendix notified Latrobe of the filing of Mrs. Bradford's complaint, and afforded Latrobe an opportunity to take up the defense in that case.

## VI

### COLLATERAL ESTOPPEL

Both Bendix and Latrobe contend that principles of collateral estoppel support their positions. Bendix argues that the decision of the state court binds this Court to the following findings: (a) that there was a defect in the pedal base; (b) that such defect was unreasonably dangerous; and (c) that such defect was the proximate cause of the accident.

On the other hand, Latrobe contends that the prior decision binds this Court to the findings (a) that Bendix was negligent and (b) that there was a defective design by Bendix. In our view, a study of the state court pleadings, transcript and appellate briefs reveals that neither party is correct in its application of the principles of collateral estoppel.

 Collateral estoppel requires that proof of the defective condition was an essential element of the final judgment in the prior case. Westric Battery Co. v. Standard Electric Co., Civ. Action No. C–1752 (D.Colo. Sept. 21, 1974), aff'd 522 F.2d 986 (10th Cir. 1975); Ratcliff v. Kite, 36 Colo. App. 261, 541 P.2d 88 (Colo.App.1975); Pomeroy v. Waitkus, 183 Colo. 344, 517 P.2d 396, 399 (1974); Bernhard v. Bank of America, 19 Cal.2d 807, 122 P.2d 892 (1942). A careful reading of the opinion of the Colorado Court of Appeals reveals that the jury could have based its verdict on the existence of a defective design, or of a defect in the base. Bradford, 517 P.2d at 412. Further, the general verdict rendered by the jury in the state action could have been based either upon a strict liability theory, or upon negligence. Although we will discuss the issue of indemnification under both theories, only the determination of Bendix's liability is binding on this Court.

## VII

### INCONSISTENT PLEADINGS IN STATE AND FEDERAL CASES

 Latrobe argues that Bendix is estopped from asserting that the defect in the

base was the primary cause of the accident, because this position is inconsistent with its pleading in *Bradford*. Latrobe cites two cases in support of this argument, *Wells and Associates v. Cardinal Properties, Inc., et al.,* 543 P.2d 1275 (Colo.App.1975) and *Wigton v. McKinley,* 122 Colo. 14, 221 P.2d 383 (1950), both of which involve inconsistent pleading *in the same case.* Latrobe also relies upon 31 C.J.S. *Estoppel* § 119. The general rule therein stated is that a plaintiff is estopped from pleading inconsistently in a subsequent case against the same party. Some courts extend this rule to include subsequent cases against different parties, but only where the plaintiff's position in the prior case was successfully maintained. *Id.* at 635–636. Here, Bendix lost on its position in the prior case.

Although Bendix is not estopped from asserting a different position in this case, both parties have stipulated to the admissibility of the full trial and appellate records of the state court action. Therein, it was the position of Bendix that the primary and proximate cause of the accident was the fact that the fulcrum pin became disengaged from the left ear of the base, placing extraordinary pressure on the defective right ear. *See* Bendix's Brief in the Court of Appeals 7–8. Bendix's expert in the state case, Professor Crawford, testified that even with the presence of the "cold shut," the ear of the base would withstand twelve times the maximum foreseeable force that would be applied to the brake pedal. *Id.* at 8–9. Only the fact that the pin became disengaged, and not the "cold shut," caused the accident. *Id.* Having heard all the facts of the case, we agree with this analysis. We expressly find that the "cold shut" was not an unreasonably dangerous defect. We further find that the "cold shut" could not foreseeably have led to this accident. Under our analysis of the facts, therefore, Latrobe is not liable either under a theory of strict liability or of negligence. Without a finding of liability, there can be no indemnification. Because Bendix alone was responsible for any potential defects in design, our consideration will be limited to the relationship of the "cold shut" to the accident, and to the comparative liabilities of Bendix and Latrobe.

## VIII

### STRICT LIABILITY

■ Latrobe argues that because the theory of strict liability does not extend to commercial losses, and the payment of the judgment in *Bradford* was a commercial loss for Bendix, Latrobe need not indemnify Bendix under a theory of strict liability. *Hiigel v. General Motors Corp.,* 544 P.2d 983, 989 (Colo.1975). The original action in this case, however, was based only on physical harm to Mrs. Bradford. Latrobe is not strictly liable to Bendix. While Latrobe may be vicariously liable to Mrs. Bradford on a theory of strict liability, Latrobe need indemnify Bendix only if Latrobe is found by this Court to be primarily liable for the accident.

■ It may appear anomalous that the concept of primary or active negligence enters into the determination of an action for indemnification, while the prior judgment may have been based on a theory of strict liability, which does not involve negligence. "Nevertheless, case law and policy considerations compel the Court to conclude that liability based on a § 402A theory should be treated as active negligence or its equivalent." *Symons v. Mueller Co.,* 526 F.2d 13, 18 (10th Cir. 1975).* A wrongdoer will be indemnified only "if the tortious conduct of the wrongdoer, regardless of the underlying theory of liability, does nothing more than furnish a condition through which a subsequent independent 'act' of a co-wrongdoer occurs." *Northwestern Mutual Ins. Co. v. Stromme,* 4 Wash.App. 85, 479 P.2d 554, 556 (1971). Bendix and Latrobe both owed the same type of duty to Mrs. Bradford; both knew the purpose for which the defective

---

* *Symons* interpreted Kansas law, but an examination of the Colorado cases compels the same conclusion.

base was manufactured. The issue in this suit, if Bendix were held liable under a strict liability theory, is whether Bendix's conduct was nothing more than a conduit through which Latrobe's prior action was permitted to cause the accident.

■ In order for strict liability to apply, there must be (a) an unreasonably dangerous defect (b) in the product which reaches the consumer or bystander without substantial change, and (c) the defect must be a proximate cause of the accident. *Restatement (Second) of Torts* § 402A. *Bruce v. Martin-Marietta Corp.*, 544 F.2d 442 (10th Cir. 1976); *Hiigel, supra; Bradford, supra.* By expressly approving the application of the doctrine of strict liability in *Bradford, Hiigel* makes clear that such an instruction was properly given, despite the subsequent mishandling of the brake assembly. *Hiigel,* 544 P.2d at 987. Whether the requirements for a finding of strict liability are actually met, however, involves factual determinations. "A defect in a brake pedal assembly which causes the braking system to fail is unreasonably dangerous." *Bradford,* 517 P.2d at 412. Based on the more persuasive testimony, we find that the "cold shut" did not cause the braking system to fail, and was not an unreasonably dangerous defect.

The proximate cause of the accident was the fact that the fulcrum pin was inserted backwards. Because the fulcrum pin was inserted backwards some fourteen years after the brake assembly left Bendix's control, the cotter pin could not be inserted, and the fulcrum pin became dislodged from the left ear of the base. The enormous pressure that thereby resulted upon the right ear of the base from the normal and necessary application of the brake pedal would have caused the accident, regardless of the presence of the "cold shut." *See* Bendix's Brief in the Court of Appeals. In this suit, there was testimony, corroborating Bendix's position in *Bradford,* that the fracture did not even originate at the site of the "cold shut." The fracture would have propagated through the ear, regardless of the presence of the "cold shut." The path went through the "cold shut" only because that was the way of least resistance. The jury could have found that Bendix's design, which permitted the fulcrum pin to be inserted backwards, was an unreasonably dangerous defect that proximately caused the accident.

■ Where the assembler has reason to rely upon the care of the parts supplier, the mere failure to inspect for defects (absent design defects, or other potentially dangerous conditions introduced by the assembler) might constitute passive conduct permitting indemnification by the creator of the defect. In this case, Bendix prescribed the specifications for the base. It is significantly unrefuted that Bendix had actual knowledge of the presence of "cold shuts" in the parts manufactured by Latrobe. Bendix, as the direct distributor and assembler of the brake pedal apparatus, should have inspected the parts for such defects that it asserts are unreasonably dangerous. In *Great American Ins. Co. v. "Quick-Way" Truck Shovel Co., supra* at 853, relied upon by Bendix, Judge Doyle noted that if the indemnitee (which was not the assembler or distributor of the product) "suspected that the supplier had not properly performed, or that the chattels were defective," he would deny indemnification. Acquiescence after actual notice of a dangerous condition in the products supplied by Latrobe negates the possibility of indemnification. *Symons, supra* at 18. Therefore, even if we were to find that the "cold shut" was an unreasonably dangerous defect which proximately caused the accident, Bendix could not obtain indemnification from Latrobe.

## IX

## NEGLIGENCE

■ A finding that Bendix was negligent would not bar indemnification, because the issue of "primary" negligence was not before the jury in *Bradford. Jacobson, supra; B. K. Sweeney & Co. v. McQuay-Norris Manuf. Co.,* 30 Colo.App. 134, 489 P.2d 356 (1971). Although *Jacobson* eliminated the word, "sole," from the "primary and proximate cause" test, "the indemnity

doctrine applies where the fault of one joint tort feasor is almost entirely the cause of the accident." *Zimmerman v. Baca, supra* at 177. This conclusion is necessitated by the absence of contribution among joint tortfeasors in Colorado.

 Because we do not regard the "cold shut" as the proximate cause of the accident, liability of Latrobe on a negligence theory is not established, even if we were to find that the "cold shut" was a proximate cause of the accident, negligence theory would require us to find that the accident was a foreseeable result of the presence of the "cold shut." This we decline to do. Further, if we were to find that the "cold shut" was a proximate and foreseeable cause of the accident, Bendix's knowledge of the presence of such a foreseeable cause, and its acquiescence in the continued use of such products, would make Bendix contributorily negligent. The use of such a defective base, after actual notice of defects in other bases, would constitute active negligence, and precludes Bendix from successfully maintaining this action for indemnification. *Symons, supra* at 18. Because there is no contribution among tortfeasors in Colorado, Bendix could not be indemnified even if the "cold shut" were a proximate and foreseeable cause of the accident.

## X

## BREACH OF MANUFACTURING SPECIFICATIONS

 The issue of whether the manufacturing specifications were breached by Latrobe is not at all decisive of this suit for indemnification. An action for violation of the specifications is an action for breach of contract, which should have been brought by Bendix in the 1950's, when it discovered that there were "cold shuts" in the parts manufactured by Latrobe. We have treated the "cold shut" as a defect, although not an unreasonably dangerous one, thereby taking the violation of the specifications into account in our consideration of liability for indemnification.

## XI

## BREACH OF WARRANTY

 Bendix also argues that it is entitled to indemnification because Latrobe breached warranties of merchantability or of fitness for a particular purpose. The analysis under warranty theory is no different, for indemnification purposes, from that under strict liability theory. *Symons, supra* at 18. We have found that the "cold shut" was neither an unreasonably dangerous defect, nor a proximate cause of the accident. Even if we had found that the "cold shut" proximately caused the accident, Latrobe's breach of warranty would not be conclusive of the issue of the issue of indemnification. We would still be compelled to weigh the relative faults of Latrobe and Bendix. We have found that the proximate cause of the accident was the fact that the fulcrum pin was inserted backwards. Bendix currently uses a design which does not permit the fulcrum pin to be inserted backwards. This change of design underscores the feasibility of precautionary measures. Rule 407, Fed.R. of Evid. In order to have avoided the effect of strict liability theory, Bendix ought, at least, to have warned the users about the dangers of inserting the fulcrum pin backwards. *Hiigel, supra* 544 P.2d at 304. Bendix failed to do this in its maintenance materials.

## XII

## PARTIAL DEFENSES

Having found for the defendant, we need not reach the contentions of Latrobe dealing with alleged disclaimers, limitations on liability, or failure to mitigate damages. Nor need we reach the issue of whether attorney fees are recoverable as a consequential expense of the indemnitor's fault, beyond noting a conflict between *Sun Indemnity Co. of N. Y. v. Landis,* 119 Colo. 191, 201 P.2d 602 (1949), which holds that attorney fees and costs incurred in the prior action are recoverable as legal consequences of the wrongful act of the indemnitor, and *Bass, supra,* which held that attorney fees

**42**

are not recoverable in indemnification actions, in the absence of a statute or agreement to the contrary.

## XIII

## ORDER

We find the issues joined in favor of the Defendant, Latrobe Die Casting Company, and against the Plaintiff, Bendix-Westinghouse Automotive Air Brake Company, and that Bendix is not entitled to indemnification from Latrobe.

It is hereby ORDERED that judgment enter for the Defendant, and against the Plaintiff; Defendant to recover its costs.

This Order constitutes the Court's Findings of Fact and Conclusions of Law.