**WILD et al. v. PAYSON et al.**
**Civ. 34–307.**

District Court, S. D. New York.
Aug. 5, 1946.

Leo B. Lebovitz, of New York City (Vine H. Smith, of Brooklyn, and Leo B. Lebovitz, of New York City, of counsel), for plaintiffs.

Breed, Abbott & Morgan, of New York City (Thornton C. Land and Ernest Brooks, Jr., both of New York City, of counsel), for defendant, American Rolling Mill Co. and Charles S. Payson.

LEIBELL, District Judge.

On December 26, 1945 the plaintiffs herein filed a complaint against several corporations and a number of individual defendants alleging damages sustained of five and a half million dollars, by reason of an alleged fraudulent conspiracy and breach of a contract. In November of 1945, one of the defendants named herein, William B. Arness, against whom the action has since been discontinued, made to the plaintiff Wild, a verbal statement of information obtained by Arness during his employment by one of the defendant corporations, the Alloy Research Corporation, which related

to the alleged breach of the contract and the alleged fraudulent conspiracy. Thereafter Arness at the request of Wild repeated and supplemented the statement at the office of plaintiff's attorney at three separate conferences. As to some of the Arness' statement the attorney wrote out his own notes, but Arness also dictated a part of his statement to the attorney's stenographer and Arness also produced certain documents and records, to which he referred for the purpose of accuracy.

On March 14, 1946, Alwyn H. Wild, one of the plaintiffs, was being examined before trial and he was questioned by defendant's attorney concerning the statement made by Arness. Plaintiff Wild described generally what Arness had said and stated on the record, with the approval of his attorney, that the defendants' attorney could have access to the stenographer's typed copy of the Arness statement, but subsequently upon a request to produce it, plaintiffs' attorney refused to do so. On July 23, 1946 the defendants moved for an order requiring the plaintiff Wild or his attorney to produce and permit the defendants to inspect and copy the transcript of the Arness statement.

The plaintiffs oppose this motion and argue that the statement is not subject to compulsory disclosure because it is a memorandum made for the use of the attorney in the preparation of the case for trial; that it does not constitute or contain material evidence; that the production of the document would tend to suppress material facts rather than disclose them; and finally that the expression of assent given by plaintiff and counsel upon the examination before trial was voluntary, could be withdrawn and affords no basis for compelling delivery and inspection of the Arness document.

The circumstances under which Arness was interviewed by plaintiffs' attorney at the attorney's office and how his statement was recorded are described in the following paragraphs from the affidavit of the attorney, Leo B. Lebovitz, submitted in opposition to this motion:

"Records and memoranda in my office show that in marshaling the facts in this case preparatory to the filing of the complaint, I ascertained that although Arness had been closely connected with the defendants at the time of the perpetration of their conspiracy and fraud upon the plaintiff Wild, that association had been terminated some time in the latter part of 1938. I thereupon arranged to meet with Arness and conferred with him three times prior to filing the complaint, to wit: on November 18th, 1945, November 29, 1945 and December 20, 1945. The complaint was filed in the office of the Clerk of this Court on December 26th, 1945.

"At the first interview Arness made certain oral statements to me solely from his recollection, which I reduced to writing. At the second conference he made additional statements, some of which were taken down in shorthand by my secretary, in the presence of Arness, and at my final conference with Arness he had with him, and consulted, his private records and documents for the purpose of accuracy. No documents, agreements, letters or other writings which might or could be used as evidence in this action have been received from Arness."

Plaintiff Wild's testimony concerning the manner in which the Arness' statement was recorded is quoted in the moving affidavit as follows:

"Q. What did Mr. Arness have to say down in Mr. Lebovitz's office when you were there? A. I think there is a very complete record of that somewhere, isn't there?

"Mr. Cally: Yes.

"Q. Do you recall the conversation? A. No. As a matter of fact, Mr. Lebovitz was the principal party, and as it was being completely taken down in shorthand, there was not much point in me trying to remember the details of what happened there. I think Mr. Lebovitz will be very glad to furnish you with the shorthand notes.

"Q. You have no objection, I take it, yourself? A. Not the slightest.

"Mr. Land: Would you be good enough to furnish me with that?

Mr. Cally: All right."

The question of whether a party can be compelled to produce or reveal statements,

documents or reports made to him or his attorney by third persons in preparation for trial has been before the courts on numerous occasions and has resulted in a sharp conflict of decisions. Bough v. Lee, D.C., 28 F.Supp. 673; Kulich v. Murray, D.C., 28 F.Supp..675; Price v. Levitt, D.C., 29 F. Supp. 164; and Rosseau v. Langley, D.C., 7 F.R.D. 170 are representative of the cases permitting the production of some such statements, while French v. Zalstem-Zalessky, D.C., 1 F.R.D. 508; Stark v. American Dredging Co., D.C., 3 F.R.D. 300; Conneway v. City of New York, D.C., 32 F.Supp. 54; and McCarthy v. Palmer, D.C., 29 F. Supp. 585 are representative of the view that such statements and documents used in the preparation for trial are not subject to compulsory production or disclosure. There are only a few appellate court cases on this question.

In Hickman v. Taylor, 3 Cir., 1945, 153 F.2d 212, 215, the latest appellate court opinion on the question, the entire bench of the Third Circuit Court of Appeals heard the appeal and handed down an exhaustive opinion. In that case one of the written interrogatories submitted to the defendant required him to state whether any statements were taken in connection with the sinking of a tug, and the death of some of the crew. The defendant was asked to attach to the answers "all such statements if in writing, and if oral, set forth in detail the exact provisions of any such oral statements or reports". The court interpreted the request as follows: "The important matters called for in the interrogatory are statements which the lawyer, acting in an investigating capacity, has taken from persons who have, or purport to have, knowledge about the facts which gave rise to the lawsuit". Hickman v. Taylor, supra page 216. The court read into Rule 33, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c (interrogatories to parties) a limitation of privilege such as is explicit in Rule 26(b) (deposition) and Rule 34 (discovery), and after finding that "privileged" as used in these rules, not only included "all that is comprehended in the rule of testimonial exclusion of confidential statements made by a client to his lawyer" but extended to and comprehended "memoranda of talks with witnesses, signed statements made by witnesses, the lawyer's recollection of talks with witnesses". Hickman v. Taylor, supra, page 223.

Hoffman v. Palmer, 2 Cir., 129 F.2d 976, involved an appeal to the Circuit Court of Appeals, Second Circuit, from a judgment for a sum of money recovered by Hoffman for injuries he received and for the death of his wife, when the automobile in which he was driving was hit by a N.Y.N.H. and H.R.R. Co. engine at an unguarded crossing. One of the questions on appeal was the correctness of the ruling of the trial judge in refusing to admit in evidence a question and answer stenographic statement signed by the locomotive engineer when interviewed by the assistant superintendent two days later. The railroad contended that the engineer's statement was made "in the regular course of business" and should have been received in evidence. The engineer was dead at the time of the trial. The appellate court discussed at great length the "regular course of business" exception to the hearsay rule. In the course of that discussion the court referred to the liberal pre-trial discovery provided for in the Federal Rules of Civil Procedure in relation to depositions and discovery. Judge Frank states (at page 997):

"We hear some of them complaining that the new Federal Rules of Civil Procedure, with their hospitality to pre-trial discovery, have engendered fraud and perjury. The answer is that no one knows. Unfortunately, there were perjury and coaching of witnesses in the old days; no data is available to show whether those evils have waxed or waned in these newer days. Some lawyers also grumble, saying that it is 'unfair' that a lawyer who has diligently prepared his case should be obliged to let counsel for the adversary scrutinize his data. But the reformers are surely right in replying that 'unfairness' to a diligent lawyer is of no importance as against much-needed improvement in judicial ascertainment of the 'facts' of cases; the public interest in such ascertainment is paramount. The supporters of liberality in discovery assert that it tends to bring about settlements and to reduce litigation. Whether that is true, again we do not know; the experiment is now in

full operation but the returns are not yet in.

"At any rate, the old 'fixed principle' of keeping the opponent in the dark as to the tenor of the evidence in one's possession is now out of date. The appendant rule here in question is equally so. It is as anachronistic as the buttons on the sleeve of a man's coat; but such a legal rule is more important than coat-sleeve buttons. As it cannot be reconciled with the liberality as to depositions and discovery contained in the new Rules, we reject it. The judge should have dealt with the request as if it had arisen under Federal Rules of Civil Procedure, rule 26(b)."

■ The word "privileged" as used in Rule 26(b) relating to depositions and in Rule 34 dealing with discovery and production of documents etc. should be interpreted as it is in the law of evidence. "Privilege is determined by the rules of evidence applicable to the trial of an action". Moore on Federal Practice, Vol. 2, p. 2641, § 34.05. Rules 26 and 34 are included in Part V of the Rules entitled "Depositions and Discovery". Two kinds of evidence are thus embraced—the testimony of witnesses and documents or physical objects. Rule 34 enables a party to prepare for trial by obtaining documents etc. which he may use as evidence at the trial in support of his own case, or which may be helpful to him as evidence in rebutting the case of his opponent. I believe that the Circuit Court of Appeals, Third Circuit, have, by their decision in the Hickman case, given the word "privileged" a broader meaning than it should receive and in that respect the decision amounts to an amendment of the Rule. The Rules have the force of law. If they are to be amended, it should be done through the proper channels. The Rules Committee has been preparing drafts of certain proposed amendments to the Federal Rules of Civil Procedure and in their Second Preliminary draft, one suggested amendment would add to Rule 30(b), entitled "Orders for the Protection of Parties and Deponents", a provision "that designated restrictions be imposed upon inquiry into papers and documents prepared or obtained by the adverse party in the preparation of the case for trial". (See, Moore, Federal Practice, Vol. 2, p. 159 of the 1945 Supplement.) That is the proper approach, if a change is considered desirable. I prefer the view of our Second Circuit Court of Appeals as expressed in Hoffman v. Palmer, 2 Cir., 129 F.2d 976 at page 997.

■ Rule 34 of the Federal Rules of Civil Procedure which permits a party to the action to move for an order compelling any other party to the action to produce documents for inspection and copying is subject to several limitations. The moving party must show good cause for the order; the document must not be privileged; and it must be relevant, i. e. constitute or contain material evidence. Heiner v. North American Coal Co., D.C., 3 F.R.D. 63; Marzo v. Moore-McCormack Lines, Inc., 7 F.R.D. 378; United States v. National City of N. Y., D.C., 40 F.Supp. 99; Beler v. Savarona Ship Corp., D.C., 26 F.Supp. 599.

■ There is no clear definition of what constitutes good cause within the rule. In Leach v. Greif Bros., D.C., 2 F.R.D. 444, 446, the court said: "It is difficult to lay down a definition of good causes that would apply to every particular case. There is a wide latitude". The test appears to be closely related to the last limitation contained within the rule, i. e. the relevancy and materiality of the matter sought is an important element in the determination of whether there exists good cause to grant the order.

Arness was employed by one of the defendants and probably was familiar with the facts and incidents which plaintiffs allege constituted fraud and breach of contract. He was originally named as a party defendant and several of the allegations of the complaint mention him by name. The affidavits clearly warrant the inference, and the plaintiffs in their argument admit, that some of the information upon which the complaint is based was obtained from the statement made by Arness. It would appear that there exists adequate reason for seeking the production of the statement and that it contains matter relevant to the issues and controversies which exist between the parties.

The remaining limitation imposed by the rule is that concerning privileged documents or statements hereinabove discussed. There is no doubt that statements made by third persons to a party's attorney are not privileged within the rule of testimonial exclusion. But many courts have been reluctant to exclude statements of third persons from the haven of privilege when they have been acquired by or through the direction of counsel in the preparation of his client's case for trial. Farr v. Delaware, L. & W. R. Co., 7 F.R.D. 494; Matthies v. Peter F. Connolly Co., D.C., 2 F.R.D. 277. The Circuit Court of Appeals for the Third Circuit affirmed this principle in Hickman v. Taylor, supra. At page 223 of 153 F.2d, the court said: "Our difficulty comes, not in any lack of confidence in our judgment upon the point, but in seeking a phrasing of our conclusion to give it wide enough scope without going too far. For instance, one is tempted to say that the lawyer's files are impregnable against any inquiry from outside. But that depends upon what the lawyer puts in them. A piece of a machine which has hurt someone, a document needed to show a fact, many things required in a lawsuit find their way from client's hands to lawyer's file and are not to be concealed until the day of trial for that reason. But here we are dealing with intangible things, the results of the lawyer's use of his tongue, his pen, and his head, for his client. This was talked about as the 'work product of the lawyer' in the argument of the case. This is a phrase which seems pretty well to describe what we are after, though we hesitate to adopt it as a label for our concept for fear that it may contain implications not now apparent to us. It does with fair accuracy describe what we are excluding ·here under the term privilege."

In the present instance the statement of Arness was voluntarily made to the plaintiff Wild and subsequently it was repeated in his attorney's office, before a stenographer. The statement was not obtained by or through the efforts of the plaintiff's attorney; it was not part of the "work product of the lawyer"; and as stated in the defendants' brief "the intervention of plaintiff's attorney formed no essential step in the obtaining of the statement".

The plaintiff's testimony shows that it was the plaintiff Wild who persuaded Arness to come to New York to talk to Wild, about becoming associated with Wild in some new venture. While discussing this matter at Wild's apartment it seems that Wild brought the conversation around to the transactions on which the complaint herein is based. Wild thus obtained the information from Arness which he later had Arness repeat before a stenographer in the office of Wild's attorney. If Wild had taken Arness to a public stenographer and Arness had there dictated a statement, no privilege could be claimed for it. Does the fact that Wild took the witness to the office of Wild's attorney to there make the statement to the attorney's stenographer clothe the statement with a privilege? No more so than if Wild had delivered to the attorney a copy of a statement that Arness had made to a public stenographer. Wigmore § 2318.

Even if the statement which is required to be produced herein could be construed to come within the privilege described in the Hickman case, it is subject at least to the same infirmities as the rule of privilege invoked for testimonial exclusive. Confidential communications from a client to his attorney are deemed privileged. However, the privilege is the client's, and such communications lose their privileged status when the client has voluntarily disclosed or permitted disclosure of the facts in relation thereto. The client's offer of testimony to a specific communication constitutes a waiver of the privilege. Wigmore, Evidence, 2327. Hunt v. Blackburn, 128 U.S. 464, 470, 9 S.Ct. 125, 32 L.Ed. 488. The privilege may be waived by testimony of the client in an examination before trial. Knaust v. Goldschlag, D.C., 34 F.Supp. 87. The plaintiff Wild in an examination before trial testified as to the circumstances under which the Arness' statement was given, and generally as to what Arness had told him. This was a disclosure of the statement to the defendants and to the public which would release it from the claim of privilege, if it ever was privileged.

■ Two other objections have been raised by the plaintiffs' attorney to the granting of the order. He asserts that the defendants have suppressed evidence by failing to produce certain documents for his perusal. The affidavits reveal that many documents have been voluntarily turned over to the plaintiffs' attorney by the defendants at his request. If there exist documents in the custody and control of the defendants which they will not turn over, the plaintiffs' attorney may avail himself of the Rules, as the defendants have. Plaintiffs' attorney charges that since the defendants have become cognizant of Arness's statement he has been admonished by his present employer not to give any further testimony in this matter. The attorneys for the defendants have denied any knowledge of such "pressure" and affirm that after diligent inquiry they have not ascertained that any one having knowledge of Arness' statement has brought about or sought the application of such pressure. Plaintiff's argument does not persuade the court to refuse to exercise its discretion in favor of granting the motion in furtherance of the purpose and spirit of the rules relative to discovery.

■ Whatever Arness stated to the stenographer in the attorney's office would not be privileged even under the reasoning of the Hickman case, and of course it would not be privileged under the Hoffman case. The memoranda in the handwriting of Wild's attorney, which the attorney made at his conferences with Arness summarizing some of the information obtained from Arness, would be privileged under the Hickman case, and the Hoffman case hardly goes so far as to hold that an attorney's notes of a conversation with a prospective witness are not privileged.

I have therefore concluded that defendants' motion should be granted to the extent of requiring the plaintiff Wild to produce for discovery and inspection and copying, the stenographic record of the Arness statement made to the stenographer in the office of Mr. Lebovitz in November and December 1945. Submit a proposed order granting defendants' application with this limitation.

Gordon F. Basler, of Cleveland, Ohio, for plaintiff.

Robert Branand, of Cleveland, Ohio, for defendant.