No. 44,408

LESLIE G. ALSEIKE, *Plaintiff* and *Appellee*, v. EDITH M. MILLER, *Defendant* and *Third Party Plaintiff*, *Appellant*, v. VERNON L. LADD, an individual; JAMES McINTOSH and HUGH SHEA, co-partners, d/b/a CYCLE ESCORT SERVICE, *Third Party Defendants* and *Appellees*.

(412 P. 2d 1007)

Opinion filed April 9, 1966.

*F. C. McMaster*, of Wichita, argued the cause, and *Stanford J. Smith*, of Wichita, was with him on the brief for Edith M. Miller, third-party plaintiff and appellant.

*Gerald L. Michaud*, of Wichita, argued the cause, and *Russell Cranmer, Orval L. Fisher*, and *M. William Syrios*, all of Wichita, were with him on the brief for Leslie G. Alseike, plaintiff and appellee.

*H. E. Jones*, of Wichita, argued the cause, and *Clarence R. Sowers, John W. Sowers, Davis S. Carson, A. W. Hershberger, Richard Jones, William P. Thompson, Jerome E. Jones, Robert J. Roth, William R. Smith*, and *Robert J. O'Connor*, all of Wichita, were with him on the brief for the third-party defendants and appellees.

The opinion of the court was delivered by

HARMAN, C.: Two separate procedural questions make up this appeal. The action was commenced as one for damages for personal injury. Plaintiff, an off-duty Wichita police officer, alleged in his petition his injury resulted from a collision with an automobile operated by defendant while in a funeral procession, which procession was being escorted by plaintiff on his motorcycle. Plaintiff asserted that defendant negligently drove her automobile out from the line of vehicles in the funeral procession into the path of plaintiff's motorcycle. Defendant filed her answer admitting that she was operating a vehicle at the time and place in question but denying generally the other allegations of plaintiff's petition and asserting that any injury to plaintiff was caused by his own negligence.

She further alleged in the alternative that one Vernon L. Ladd, another off-duty police officer who was escorting the procession, and plaintiff were co-adventurers and agents of each other and that Ladd's negligence was the proximate cause of plaintiff's injuries.

At the same time, defendant filed a third-party proceeding against the said Ladd and also against James McIntosh and Hugh Shea, doing business as Cycle Escort Service. In her third-party petition defendant incorporated the allegations of her answer and she further alleged that Ladd was the employee of McIntosh and Shea who had contracted with a mortuary to provide a motorcycle escort of uniformed police officers to escort the funeral procession in question; that while Ladd was so acting in providing such escort service, being stationed at an intersection immediately prior to the collision at which defendant attempted to make a left turn, he permitted the defendant and the plaintiff to collide; the third-party defendants were charged with eleven grounds of negligence causing the collision, and her prayer asked that she, as third-party plaintiff, recover judgment against the third-party defendants for the amount of any judgment rendered against her in favor of the plaintiff.

Upon motion of the third-party defendants the proceeding against them was dismissed. Defendant appeals from that order of dismissal.

This third-party action is to be sustained, if at all, pursuant to the provisions of K. S. A. 60-214 (a), the pertinent part of which is as follows:

"*When defendant may bring in third party.* At any time after commencement of the action a defendant, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him."

It may first be noted that this statute pertains to procedure only and does not create any substantive rights. The statute relates generally to the subject of reimbursement, indemnity or contribution, but it creates no substantive right to the same. There must be some substantive basis for the third-party claim before one can utilize the procedure of 214 (a). Third-party practice is simply a permissive procedural device whereby a party to an action may bring in an additional party and claim against such party, because of a claim that is being asserted against the original party. It has been said that the general purpose of the practice is to avoid circuity of action and to dispose of the entire subject matter aris-

ing from one set of facts in one action, thus administering complete and even-handed justice expeditiously and economically (see 1A Barron and Holtzoff, Third-Party Practice, § 422, p. 644).

In order to come under 214 (*a*) the defendant's claim against the third-party defendant must be such that the latter "is or may be liable to him for all or part of the plaintiff's claim against him." The advisory committee for our present code of civil procedure had this to say with respect to the section:

"Although it is the purpose of the provision to permit the entire controversy in a single proceeding to be determined, it is only the liability of the third-party defendant to the original defendant for the original defendant's liability to the plaintiff that is to be determined." (Gard's Kansas Code of Civil Procedure, Advisory Committee Notes, p. 74.)

Thus we see it is not a device for bringing into an action any controversy which may happen to have some relation with it.

In her third-party petition defendant makes an ingenious argument that she is the beneficiary of an implied warranty by reason of the contractual relation between the mortuary and the third-party defendants, for which she would assert a breach, but it is clear her petition states a cause of action sounding in tort, being based on negligence, and must be so construed. The third parties sought to be joined here are simply alleged joint tortfeasors, being the other motorcycle officer involved in the collision and his principals, and it must be held that what is sought here is contribution between joint tortfeasors. Kansas adheres to the common law rule that there is no right of contribution between joint tortfeasors (*Rucker v. Allendorph*, 102 Kan. 771, 172 Pac. 524). In enacting our present code of civil procedure the legislature declined to create this right as initially recommended by the advisory committee (see JCB, Nov. 1962, Special Report, Recommendations, p. 38). Contribution being forbidden there is no way in which the third-party defendants are or may become liable to defendant for all or part of plaintiff's claim against defendant. Our 214 (*a*) is identical with the present Federal Rule 14(a). The case of *McPherson v. Hoffman*, 275 F. 2d 466 (6th Cir., 1960), was an action brought by a railroad employee for injury sustained while being transported in a truck of the railroad which collided with an automobile of third persons, wherein the railroad as third-party plaintiff brought in such third persons as third-parties defendant. The court said:

"The theory of this rule is indemnity, that is, liability over from the third-party defendant to the defendant. Moore's Federal Practice, Vol. 3, Section

14.16 (2d Ed.) Counsel for the Chesapeake and Ohio argue in their brief that they were entitled to such indemnity from the third-parties defendant.

. . . . . . . . . . . . .

"We take up first whether or not the third-party complaint stated a claim against third-parties defendant. It charged the McPhersons with being solely responsible for the accident through their negligence. If this were true there was no liability against Chesapeake and Ohio and it would have had a complete defense; that it was not negligent. In the alternative, they might both be negligent, in which event they would be joint tort feasors. In either case the Chesapeake and Ohio would not be entitled to indemnity.

"The question thus presented was decided by this Court in The Detroit Edison Company v. Price Brothers Company, 6 Cir., 249 F. 2d 3. On the authority of that decision we hold that the third-party complaint did not state a valid claim for relief against the McPhersons. The same question arose in Baltimore & Ohio Railroad Co. v. Saunders, 4 Cir., 159 F. 2d 481.

"Furthermore the plaintiff had a right to determine for himself whom he would sue. He might have sued the Railroad Company and the McPhersons jointly or he might have sued either separately. 'Joint tort feasors have no right to determine whether they shall be jointly or separately sued for their wrong. This right rests with the party aggrieved and if he elects to sue them jointly he is entitled to a verdict responding to his allegations so that he may have judgment for his entire damages against both of the wrongdoers.' Detroit City Gas Co. v. Syme, 6 Cir., 109 F. 2d 366, 369. After he had made his choice, neither the court nor the defendant could add another party defendant for him.

"In Baltimore & Ohio Railroad Co. v. Saunders, cited above, the Court said, 159 F. 2d at page 483: 'The discretion was properly exercised here in denying a motion which would have required plaintiffs to litigate a cause of action which they did not assert in their complaint against parties who they did not join as defendants, and whose joinder, if they had been joined, would have defeated the jurisdiction of the court.' " (pp. 469-470.)

Defendant argues she is not here seeking contribution but indemnification, citing cases among which she says that of *City of Fort Scott v. Penn Lubric Oil Co.*, 122 Kan. 369, 252 Pac. 268, is most applicable to the instant case. These cases are distinguishable in that they involve incidents where the party originally sued was liable regardless of fault, the liability resting upon some different legal foundation; the joint tortfeasor aspect is lacking. In the *Fort Scott* case the city was liable for injuries resulting from a defective sidewalk. In that type of case the city may look for indemnification to the third party whose active, primary negligence caused the injury. That is not our situation here. In this case defendant incurs no liability unless she was at fault. If, as she asserts, the entire fault of the collision lies with the third parties, and she proves this at the trial, then she will not be held liable. If she is in any way at fault she is liable for all of plaintiff's injuries. The

trial court ruled correctly in dismissing the third-party proceeding. (See further cases cited at 11 A. L. R. 2d 238, and 1A Barron and Holtzoff, Third-Party Practice, § 426, note 50, p. 668, wherein impleader was similarly not permitted.)

The second question in this appeal concerns the production of statements taken by an adjuster on behalf of defendant's insurance carrier. Plaintiff's action was commenced September 14, 1964. On December 2, 1964, plaintiff moved the court for an order requiring defendant to produce and permit plaintiff to inspect and copy certain listed statements. Hearing upon this motion developed the following facts: A Mr. William Haun, who has an LLB degree and is admitted to the bar in Kansas and Oklahoma and is a member of the Wichita Bar Association, is employed by Claims, Inc., at Wichita. His duties include what is known as house counsel for Claims, Inc. whose business is to investigate and adjust claims. Claims, Inc. has an arrangement with defendant's insurance carrier whereby Claims, Inc. commences an investigation when a loss is reported to it. On the same day of the collision, Claims, Inc. received a call from defendant's insurance agency respecting the collision and as a result certain written statements were taken under the supervision of Mr. Haun. The statements were taken by a Mr. Bainum who is not a lawyer although some of the adjusters who take statements for Claims, Inc. are lawyers. The statements included two which were taken April 14, 1964, the day of the collision, one the following day, two more including that of defendant on April 16, 1964, three on April 21, 1964, and one each in May and June of 1964. Defendant's Wichita counsel in this litigation was first contacted respecting the collision on April 22, 1964, by house counsel of defendant's insurance carrier in Kansas City, Missouri. Claims, Inc. had no contact with defendant's Wichita counsel until after the statements were taken. The trial court sustained plaintiff's motion to produce and defendant appeals from that order.

Our statute concerning production of documents is K. S. A. 60-234, the pertinent part of which provides:

"Upon motion of any party showing good cause therefor . . . and subject to the provisions of 60-230(b), the court in which an action is pending may (1) order any party to produce and permit the inspection and copying . . . of any designated documents, papers . . . not privileged, which constitute or contain evidence relating to any of the matters within the scope of the examination permitted by 60-226(b). . . ."

Defendant contends, first, plaintiff failed to show good cause for production of the statements.

Our 60-234 is the same as Rule 34 of the Federal Rules of Civil Procedure. While the federal courts have been diverse in their interpretation of some aspects of their Rule 34, there seems to be substantial agreement that some showing of good cause must be made before production will be ordered. (See cases cited at 4 Moore's Federal Practice, 2d ed., Discovery and Production of Documents, etc., § 34.07, note 7, p. 2443). Reason and the plain wording of the statute support that view.

And it is clear the requisite showing of good cause must be something more than mere relevancy to the subject matter involved in the pending action because that test is provided for by the reference in the statute to the provisions of 60-230($b$). In commenting upon Federal Rule 34 the court in *Guilford National Bank of Greensboro v. Southern Ry. Co.*, 297 F. 2d 921 (4th Cir., 1962) stated:

"The specific requirement of good cause would be meaningless if good cause could be sufficiently established by merely showing that the desired materials are relevant, for the relevancy standard has already been imposed by Rule 26(b)." (p. 924.)

The courts, both federal and state, have not been at all uniform in determining what constitutes good cause for the discovery of documents. Various factors and considerations have been applied. The interested reader may find a host of cases on the subject cited in 2A Barron and Holtzoff, Discovery, § 796; in 4 Moore's Federal Practice, 2d ed., Discovery and Production of Documents, etc., § 34.08, and in the annotation commencing at 73 A. L. R. 2d 12. The question is largely a factual one and not a matter for certain definition of uniform application in all cases. In *Brauner v. United States*, 10 F. R. D. 468, (D. C., E. D. Pa., 1950), the court said:

"Concededly, in determining what amounts to good cause under Rule 34, the trial court has a wide discretion. Every case presents its own particular problems and any attempt to establish rigid rules would seriously impair the flexibility and efficiency of the federal discovery procedure." (p. 470.)

At 27 C. J. S., Discovery, § 69, we find this discussion respecting production of documents:

"Under statutory provisions to that effect in the various jurisdictions, parties litigant commonly have the right to require their adversaries to produce or make available for inspection or examination writings or other matters in their custody or control; and the courts have the power to grant discovery of articles

or property in the possession of, or under the control of, a party relating to the merits of an action or a defense thereto.

"The validity of such statutes has been sustained; and they are regarded as remedial in nature, to be liberally construed, and as applicable to pending actions. The use of the remedy should be encouraged rather than discouraged. The right to the production and inspection of writings and other matters is, particularly as it relates to the jurisdiction of courts of law, strictly statutory, in that such right was not available under common law.

"The statutory right is intended to assist in the administration of justice by facilitating and expediting the preparation of cases for trial and, in a measure, guarding against undesirable surprise and delay; and it is designed to simplify procedure and obtain admissions of facts and evidence, thereby shortening costly and time-consuming trials. It is based on ancient principles of equity, the statutes conferring it being but an enlargement of judicial power by providing for the exercise of an old right in another tribunal and being enacted with a view of providing a more speedy and less expensive remedy than by proceedings in chancery.

"More specifically, the purpose of the statutes is to enable a party litigant to discover material information which, by reason of an opponent's control, would otherwise be unavailable for judicial scrutiny, and to provide a convenient and summary method of obtaining material and competent documentary evidence in the custody or under the control of an adversary. It is a further extension of the concept of pretrial.

"The power of the court to compel discovery under the statute is very broad; and, the statutes generally being permissive, the application of the statute rests in the discretion of the court, as discussed infra § 81, and depends on the circumstances of each particular case." (pp. 203, 204.)

And the introductory summary in § 81 referred to in the foregoing is as follows:

"It rests in the sound legal discretion of the trial court to determine whether an order for discovery of writings shall be made in a particular case." (p. 259.)

The provision for the production of documents is an integral part of the discovery process. Discovery has a vital role in our code of civil procedure with its notice type pleading and its basic philosophy that mutual knowledge of all relevant facts is essential to the proper disposal of litigation and that prior to trial every party to a civil action is entitled to the disclosure of all such information in the possession of any person, unless the information is privileged (see 2A Barron and Holtzoff, Depositions, § 641). Our code of civil procedure is to be liberally construed to secure the just, speedy and inexpensive determination of every action (K. S. A. 60-102). In view of this spirit we think then that what should be shown as good cause are such circumstances as give the trial court reason to expect that the beneficial objectives of pretrial discovery will be achieved and that such discovery should be

granted as will accomplish full disclosure of facts, eliminate surprise and promote settlement. While this hardly provides a rule of thumb which will readily decide a particular case, it does identify factors to be considered in determining good cause. See article entitled *Discovery* by Charles Alan Wright at 35 F. R. D. §§ 81, 87, pp. 39, 79.

In addition to the good cause requirement it may be well to note the statute permitting production also is made subject to the scope of examination permitted by 60-226(*b*) and to the provisions of 60-230(*b*). Under this latter proviso if significant countervailing considerations appear, such as, for example, something in the nature of a qualified privilege as mentioned therein (to be distinguished from a testimonial privilege), the protective power of the court may be brought into play to strike a fair balance of the competing interests, and such power may also be used to prevent annoyance, undue expense, embarrassment or oppression. An order of court being required in the first instance, objections to prevent abuse may be made at the beginning before any duty attaches to make disclosure.

The trial court in the instant case had before it the facts hereinbefore related. It had the allegations of the petition to the effect that plaintiff suffered severe injury in the collision. Additionally we are told in oral argument that plaintiff was hospitalized as a result thereof. Some inequality or disadvantage of the parties may be inferred. The taking of the statements by the adjuster commenced on the day of the collision. Eight were taken within a week. Five months elapsed between the time of the collision and the commencement of suit. There is substantial authority for the view that witnesses' statements of the facts of an accident, when taken shortly after the accident, are documents of unique value in the discovery of truth by the judicial process, and accordingly that their character as such may constitute good cause for ordering production of the statements. For example, in *Brown v. New York, New Haven & Hartford R. Co.,* 17 F. R. D. 324, (D. C., S. D. N. Y., 1955), the court said:

"The direction of the decisions indicates that with respect to statements of witnesses, good cause, such as death, inability to locate and so forth, must be shown before production for the purpose of copying will be allowed under Rule 34. [citations] But where the statements sought are ones taken at or about the time of the accident complained, the statements are unique in that they constitute the immediate impression of the facts. Moreover, as in the instant situation, defendant's employees, who took the statements, were on

hand at the time of the happening and controlled the circumstances surrounding the taking of the statements. In this instance, there can be no duplication by a deposition that relies upon memory, and an allegation of these facts, uncontroverted, is a sufficient showing of good cause." (p. 325.)

In *Herbst v. Chicago, Rock Island & Pacific R. Co.*, 10 F. D. R. 14 (D. C., S. D. Iowa, 1950), this was stated:

"Even though the train crew and each of them might now be made available for interrogation by the plaintiff, the facts thereby disclosed would not necessarily be identical with the statements originally made by said train crew. Much time has elapsed, the memories of the witnesses involved would necessarily be dimmed with reference to the specific details of the events about which they originally had made statements. Their statements made immediately after the accident may and undoubtedly will lead plaintiff to the discovery of material and relevant facts upon which to adduce competent evidence at the trial of this cause. 'Good cause' is therefore shown." (p. 18.)

And in *Pennsylvania R. Co. v. Julian*, 10 F. R. D. 452, (D. C., Delaware, 1950), we find this:

"While it is true that in some cases a party may not be entitled to the production of statements of witnesses or of other persons procured by the other party, because he is in as good a position to obtain such statements himself, this, in my opinion, is not such a case. The reports and statements of the plaintiff's employees were made, it appears, almost immediately after the happening of the accident. Suit was not brought by the plaintiff until eleven months after the accident. It follows, therefore, that even if the defendant had then acted with extraordinary expedition to obtain the statements of those employees by taking their depositions, such depositions would not have been based upon a reasonably fresh recollection of the events.' (p. 453.)

In *Guilford National Bank of Greensboro v. Southern Ry. Co.*, 297 F. 2d 921 (4th Cir., 1962), Chief Judge Sobeloff stated:

"The plaintiff had pointed out a number of circumstances which, when viewed in conjunction with the obvious relevancy of the desired statements, it claims are special and justify the District Judge's finding of good cause. First, it points out that some of the witnesses' statements were given one day after the accident. It is argued that since it is unlikely that the witnesses, when questioned at a later date, would be able to recapture their immediate perceptions of and reactions to the accident, their written statements, in addition to being extremely valuable to counsel, are irreplaceable. Indeed, it appears that the courts are unanimous in holding that a showing that the statements were made at the time of the accident satisfies the good cause requirement of Rule 34. [citations] Nevertheless, in all the above cited cases, not only were the witnesses' statements approximately contemporaneous with the accident, but opposing counsel had no opportunity to question the witnesses until weeks or months later, if he could question them at all." (p. 926.)

Considering all the foregoing we are of the opinion the trial court under all the facts and circumstances in this case was within its

power of discretion in determining that good cause existed for the production of the requested material, and we will not interfere with that exercise of discretion in the absence of a showing of clear abuse.

Defendant further urges the statements in question were protected by what may be called the Kansas "work product" rule. This limitation upon discovery is contained in the last sentence of K. S. A. 60-226(b) in the following language:

"A party shall not require a deponent to produce, or submit for inspection any writing prepared by, or under the supervision of, an attorney in preparation for trial."

This is designed to protect from inquiry what has come to be known as the lawyer's "work product" to the extent of placing beyond the reach of the discovery procedure any writing prepared by, or under the supervision of, an attorney in preparation for trial. These cover the lawyer's own notes, memoranda or anything which reflects his "mental impressions, conclusions, opinions or legal theories" including statements he takes from witnesses (see *Hickman v. Taylor*, 329 U. S. 495, 508, 67 S. Ct. 385, 392, 91 L. ed. 451, 461). As to these writings the trial court has no discretion to require their production (see Gard's Kansas Code of Civil Procedure, p. 137), and in this respect our rule differs from the more flexible federal rule on the subject laid down in the *Hickman* case wherein some discretion is left in the trial judge to weigh the need for the material against the policy consideration protecting it as a product of trial preparation.

The policy basis for the work product rule is the need for the lawyer handling a case to have full rein to develop his theory and strategy in the case if the adversary system is to work effectively. To perform this role the lawyer needs to be able to work without fear of disclosure, at least in the earlier stages of preparation. And he needs protection from the possibility that he will be cast in the role of a witness and, even worse, of a witness antagonistic to other witnesses upon whose testimony his client's case may depend (see concurring opinion of Justice Jackson in Hickman v. Taylor, *supra*).

In the case at bar the statements were taken by a claims adjuster and not under the supervision of an attorney acting in the role of attorney in preparation for trial. Defendant would have us extend the rule to include statements taken on behalf of an insured by his insurance carrier and indeed this has been done by a few courts in the absence of explicit statutory provision. The decisions thereon are not in harmony and we need not go into them. Our own leg-

islative direction seems plain, that the prohibition applies only to the work of the attorney or of those acting under his supervision in preparation for trial. Judge Gard, chairman of the advisory committee for our code of civil procedure, has commented:

"Certainly by implication the new Kansas rule precludes any idea of extending the work product doctrine to reports or statements, even if written, obtained by the client or his investigators which are not prepared 'under the supervision of an attorney in preparation for trial.'" (33 JKB, Spring, 1964, p. 60.)

As heretofore indicated the work product immunity rests on the idea it is necessary to preserve the independence of the lawyer and thus, indirectly, the adversary system. These considerations are simply not involved in the case of statements concerning a casualty taken by a claims adjuster for the purpose of investigation, evaluation and possible settlement of the claim, and we are not prepared to assimilate the role of the adjuster to that of the lawyer in the work product area. We would reemphasize that production of the work of the adjuster remains subject to the protection of the good cause requirement. We, therefore, hold the trial court committed no error in declining the protection of the work product rule to the writings in question.

Finally, defendant urges that the statement made by her to the claims adjuster was a privileged communication not subject to discovery. Both 60-234 and 60-226(*b*) contain the limitation that the material sought be "not privileged." Privilege, within the meaning of the federal discovery rules, is the testimonal privilege as it exists in the law of evidence (*United States v. Reynolds,* 345 U. S. 1, 73 S. Ct. 528, 97 L. ed. 727; *Wild v. Payson,* 7 F. R. D. 495 (D. C., S. D. N. Y., 1946), and we so construe our own statutes.

Constitutional limitations aside, our law of evidence is now embodied in statute, the basic rule being K. S. A. 60-407 which provides:

"Except as otherwise provided by statute (*a*) every person is qualified to be a witness, and (*b*) no person has a privilege to refuse to be a witness, and (*c*) no person is disqualified to testify to any matter, and (*d*) no person has a privilege to refuse to disclose any matter or to produce any object or writing, and (*e*) no person has a privilege that another shall not be a witness or shall not disclose any matter or shall not produce any object or writing, and (*f*) all relevant evidence is admissible."

The privilege for which defendant contends is that of lawyer-client, found in K. S. A. 60-426(*a*) in pertinent part as follows:

"(a) *General rule.* Subject to section 60-437, and except as otherwise provided by subsection (b) of this section communications found by the judge to have been between lawyer and his client in the course of that relationship and in professional confidence, are privileged. . . ."

This privilege is further delineated by the definitions contained in K. S. A. 60-426(c) as follows:

"As used in this section (1) 'client' means a person or corporation or other association that, directly or through an authorized representative, consults a lawyer or lawyer's representative for the purpose of retaining the lawyer or securing legal service or advice from him in his professional capacity . . . (2) 'communication' includes advice given by the lawyer in the course of representing the client and includes disclosures of the client to a representative, associate or employee of the lawyer incidental to the professional relationship; (3) 'lawyer' means a person authorized, or reasonably believed by the client to be authorized to practice law in any state or nation the law of which recognizes a privilege against disclosure of confidential communications between client and lawyer."

Bare recitation of the foregoing statutes makes it clear that the lawyer-client privilege has no application to the situation of the claims adjuster and the insured. The liability insurance carrier functions in an independent role. Statements obtained by it from its insured do not come into the category of communications of a client to his lawyer, none of the essentials of the professional lawyer-client relationship being present. More need not be said.

There being no error shown in the trial court's orders, they are affirmed.

APPROVED BY THE COURT.