**Leda Mae SYMONS et al., Plaintiffs,**

v.

**MUELLER COMPANY, Defendant and Third-Party Plaintiff-Appellant,**

v.

**LIBERAL GAS COMPANY, Third-Party Defendant-Appellee.**

No. 74–1852.

United States Court of Appeals, Tenth Circuit.

Oct. 29, 1975.

Rehearing Denied Dec. 4, 1975.

Jerry M. Ward, Great Bend, Kan., for appellant.

Robert C. Foulston, Wichita, Kan. (Gerald Sawatsky, Wichita, Kan., on the brief, Foulston, Siefkin, Powers & Eberhardt, Wichita, Kan., of counsel), for appellee.

Before HOLLOWAY, McWILLIAMS and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

This is an appeal by Mueller Company (Mueller) from an order of the District Court dismissing its third party complaint seeking indemnity from Liberal Gas Company (Liberal) for a personal injury and property damage judgment rendered in favor of the plaintiffs and against Mueller resulting from a gas line explosion in the plaintiffs' residence on March 22, 1969. That trial resulted in jury verdicts against Mueller and in favor of plaintiff Symons in amount of $475,000.00, plaintiff Schields in amount of $10,500.00 and plaintiff Travelers Insurance Company in amount of $15,-400.00. On appeal to this court one of Mueller's principal contentions was that Kansas law did not encompass the strict liability doctrine and that the Trial Court erred in submitting that theory for jury consideration rather than the simple negligence theory. Mueller argued that if the Court had confined the issue to one of negligence only, the evidence was such that if the tee valve purchased by Liberal from Mueller was in fact defective upon delivery, the *sole* negligence in relation to the later explosion and attendant damages was that of Liberal which proceeded to install the tee valve after noting its alleged defective threads and/or having had unhampered opportunity and obligation to notice any such defects and to reject the tee valve before installing it. The Trial Court rejected Mueller's contention and instructed the jury on the theory of lia-

bility known as *implied warranty or strict liability* which arises as a matter of law as a result of public policy which seeks to protect the buying public from inherently injurious or dangerous products which are defective. The jury was also instructed that if it found the service valve tee to be defective when sold and delivered by Mueller to Liberal that the fact that Liberal may have contributed to the cause of the explosion *was not* to be considered by the jury.

On appeal we affirmed the Trial Court's finding that even had Liberal been at fault in the installation of the defective valve that "the defect was a manufacturer's defect . . . (and) . . . the mere fact that two tortfeasors were both at fault does not serve to relieve the other." We further held that even though the Kansas Supreme Court had not designated the type of action there involved as one of strict liability, but rather one of breach of warranty, this did not render the Trial Court's determination that Kansas had adopted the doctrine of strict liability erroneous. We observed that Kansas has applied that which we believe to amount to strict liability in cases involving sales of food and to products such as gloves and tires. Pointedly, we noted that the Court's charge to the jury clearly expounded that proof of proximate cause was essential in a strict liability action in conformance with the rule that strict liability applies to the manufacturer-seller of products which result in injury to the user or consumer. And, in conjunction with this holding, we further upheld the Trial Court's view that if there existed concurrent causes of negligence (both on the part of Mueller and on the part of Liberal), that both parties would be concurrently responsible to the plaintiffs. *Symons et al. v. Mueller Company,* 493 F.2d 972 (10th Cir. 1974).

In affirming the Trial Court's judgment, we also observed:

At present there is pending in the United States District Court . . . third party action instituted by Muel-

ler . . . Mueller is entitled to know, . . . whether the [loan receipt and] agreements (and concurrent payment by Liberal to the plaintiffs for release) constitute a release (of all liability by all parties who may have been at fault) and whether the entire amounts paid were in truth loans or were given in exchange for covenants not to sue.

493 F.2d at 978.

The instant suit involves the issue above referred to. The Trial Court held that Mueller and Liberal were joint tortfeasors, i. e., Mueller in the manufacture and delivery to Liberal of the defective valve, and Liberal in its failure to properly inspect, install, test and maintain the gas service lines and the service valve.

The Trial Court held that one liable under a strict liability theory (Mueller) is in pari delicto with one liable for breach of implied warranty (Liberal) and that, as a consequence, neither is entitled to *indemnity* from the other. On this predicate, the Court dismissed Mueller's third party complaint and held: (1) that the loan receipt agreements entered into between Liberal and plaintiffs are invalid insofar as they circumvent the rule prohibiting indemnity between joint tortfeasors; and (2) the loan receipt agreements are covenants not to sue. The Court accordingly ordered the Symons' judgment against Mueller reduced by $90,000.00 (the sum paid by Liberal re loan receipt); the Schields judgment against Mueller reduced by $10,354.59 (the sum paid Liberal re loan receipt) and that neither Symons or Schields were required to pay back any part of the sums which they received under the covenants not to sue and loan receipt agreement.

On appeal, Mueller poses these issues for review: (1) Is the judgment in favor of the plaintiffs and against Mueller entered on the general verdict of the jury a determination of the relative character of the acts or omissions of Mueller on the one hand and of Liberal on the other so as to be conclusive of the issues presented on the third party complaint? (2) Is the determination of the character of the acts or omissions of Mueller on the one hand and of Liberal on the other a question of fact for the jury? and (3) Is the manufacturer of the service valve tee to be installed by a gas company in its natural gas transmission lines entitled to maintain an action for indemnity against the installer where the evidence establishes that the installer failed to exercise the highest degree of care?

I.

■ The right of indemnity involves some of the form of contribution, but the two are distinguishable in this respect: In the case of indemnity the defendant is liable for the whole damage (joint tortfeasors in pari delicto) springing from contract, while in contribution the defendant is chargeable only with a ratable proportion founded not on contract but upon equitable factors measured by equality of burden. 41 Am. Jur.2d, Indemnity, § 3; 18 Am.Jur.2d, Contributions, § 2. Stated another way, while contribution distributes the loss equally among all tortfeasors, each bearing his pro rata share, indemnity seeks to transfer the entire loss imposed upon a tortfeasor to another who, in justice and equity, should bear it. 8 A.L.R.3d 629.

Thus, in *Security Insurance Company of New Haven v. Johnson,* 276 F.2d 182 (10th Cir. 1960), involving interpretation and application of Kansas law, we held in part:

The general rule is that, in the absence of express contract, there is no contribution between joint tortfeasors. *But where they are not in pari delicto, and their negligence is substantially different not merely in degree but in character, it is generally recognized that indemnity may be awarded.* [Cases cited].

Concentration . . . on the active-passive idea must not becloud the more fundamental basis of the doctrine . . . found to have applica-

tion also by reason of otherwise described differences turning upon primary and secondary liability, actual fault as distinguished from that which is imputed or constructive, knowledge or lack of knowledge . . . . The fundamental limitation as applied by this court in *United States v. Acord,* supra, . . . is that the character of the negligence must be fundamentally different; and, of course, indemnification must be rationally justified upon equitable considerations. [Emphasis Supplied]

276 F.2d at 185.

In *Russell v. Community Hospital Association,* 199 Kan. 251, 428 P.2d 783 (Kan.1967), the Kansas Supreme Court applied the primary or active fault doctrine in an action for injuries sustained when the plaintiff fell on steps of the hospital, to-wit:

> . . . the negligence of the architect or contractor, if any, may prove to be the primary or active cause of the injury and the appellants [operators of the hospital] would be entitled to indemnity. On this theory . . . the third-party petition is not one designed to exact contribution between joint tortfeasors, but one designed to seek indemnity from the third-party defendants by reason of their primary liability—precisely a situation encompassed within the provisions of K.S.A. 60–214(a).

428 P.2d at 788–789.

The Trial Court recognized those Kansas decisions which permitted indemnity based on the distinction between active and passive negligence. In *Fenly v. Revell,* 170 Kan. 705, 228 P.2d 905 (1951), indemnity was allowed in favor of an employer who was held to be vicariously liable for the tort of his employee imputed by law. And in *City of Fort Scott v. Pen Lubric Oil Co.,* 122 Kan. 369, 252 P. 268 (1927), the city was held to be entitled to indemnity from the party who created the defective sidewalk which caused injury resulting in initial liability to the city.

We concur in the Trial Court's holding that under the law of Kansas, indemnity (as distinguished from contribution) will be allowed only where public policy and justice dictate that the responsibility should be shifted from Mueller to Liberal, and that no such dictate exists in the case at bar.

### II.

In the prior proceedings before this Court in *Symons v. Mueller, supra,* the general verdict of the jury did not indicate whether the jury relied upon the theory of negligence or strict liability, based on Section 402A of the Restatement of Torts. Mueller argues that the judgment on a general verdict is not conclusive as to the relative rights and liabilities of Mueller and Liberal and that the relative rights and liabilities cannot be determined until put in issue, litigated and determined by the jury.

The Trial Court, in rejecting Mueller's contention that the issue of relative rights and liabilities must be determined by the jury, held, in effect, that the issue of Mueller's active negligence had already been determined, regardless of which theory the jury relied upon, in the prior proceeding. We agree.

It is well established that where joint tortfeasors are in pari delicto—where each is chargeable with active or affirmative negligence contributing to the injury—neither is entitled to indemnity from the other, although he may be entitled to contribution. *Standard Brands, Inc. v. Bateman,* 184 F.2d 1002 (8th Cir. 1950), cert. denied 340 U.S. 942, 71 S.Ct. 505, 95 L.Ed. 679 (1951); *Torres v. The Kastor,* 227 F.2d 664 (2nd Cir. 1955); *William F. Larrick, Inc. v. Burt Chevrolet, Inc.,* 147 Colo. 133, 362 P.2d 1030 (1961); 41 Am.Jur.2d, Indemnity, § 21; 18 Am.Jur.2d, Contributions, §§ 33 et seq.; 97 A.L.R.2d 622, §§ 5 and 6; Restatement of the Law, Restitution, 1965 Supplement, § 76.

The Trial Court, in its memorandum opinion, observed:

In the present case, the parties apparently agree that if the jury's verdict was based on the negligence theory, Mueller would be considered actively negligent, and therefore not entitled to indemnity. The controversy focuses, instead, on the possibility that the jury's verdict was based on the § 402A theory. The specific question presented is whether liability based upon § 402A should be treated as active rather than passive negligence for purposes of rights to indemnity. The Court concedes that a finding of liability based upon § 402A does not require a finding of *any negligence.* Nevertheless, case law and policy considerations compel the Court to conclude that liability based on a § 402A theory should be treated as active negligence or its equivalent. ·

R., Vol. I, pp. 19, 20.

■ We concur with the Trial Court's analysis. Further discussion may be helpful. The liability is "strict" in the sense that while it is not necessary to prove the defendant's negligence, the liability is nevertheless in tort because it is still necessary to prove that the product was defective and that the defectiveness was the proximate cause of the injury. This necessity of proving defectiveness of the product applies no matter what theory governs the particular action: negligence, breach of express or implied sales warranty, strict liability, or any other theory. *McGrath v. Wallace Murray Corporation,* 496 F.2d 299 (10th Cir. 1974); *Franks v. National Dairy Products Corporation,* 414 F.2d 682 (5th Cir. 1969); *Toth v. Corning Glass Works,* 411 F.2d 912 (6th Cir. 1969); 63 Am.Jur.2d, Products Liability, § 9; 6 A.L.R.3d 1367.

■ It is said that strict liability is a vehicle of social policy and looks toward protection of the public safety. *La Gorga v. Kroger Company,* 407 F.2d 671 (3rd Cir. 1969); 63 Am.Jur.2d, Products Liability, § 123; *Greenman v. Yuba Power Products, Inc.,* 27 Cal.Rptr. 697, 59 Cal.2d 57, 377 P.2d 897 (1962); 13 A.L.R.3d 1049; Restatement of the Law, Torts 2d, § 402A(2). Thus, in a products liability case, a plaintiff must establish the defendant's relationship to the product in question, the defective condition of the product, and the existence of the proximate causal connection between the condition and the plaintiff's injuries or damage in order to hold a defendant liable on the theory of strict liability. 63 Am. Jur.2d, Products Liability, §§ 128–135; 13 A.L.R.3d 1057; Restatement of the Law, Torts 2d, § 402A.

■ The doctrine of strict liability is in many facets akin to the doctrine of res ipsa loquitur, often recognized and applied by this Court on the basis of a presumption or inference of negligence upon a showing that the harm does not ordinarily occur in the absence of negligence and that the defendant was in control of the instrumentality which caused the injury. *Weeks v. Latter-Day Saints Hospital,* 418 F.2d 1035 (10th Cir. 1969); *Hardware Mutual Insurance Company v. Lukken,* 372 F.2d 8 (10th Cir. 1967). In the sense of "pari delicto" liability, under Kansas law, one who acquiesces or joins in the dangerous condition after actual notice of the defect created by the primary wrongdoer cannot maintain an action for indemnity or contribution, since the parties are in pari delicto. We deem it relevant here to note that in our prior opinion, we observed:

In the course of installing the new main, six or seven service valve tees manufactured by Mueller Company were installed. According to the testimony of Liberal Gas Company the service valve tees were tested at the time of installation, and at that time they held the required pressure. Subsequently, about a year after the installation . . . a routine inspection was conducted and no leaking gas was detected. This was approximately six months prior to the date of the explosion.

493 F.2d at 974.

■ Kansas had adopted the principle that where one of several wrongdoers has been compelled to pay damages for a wrong committed, the general rule is that he cannot compel contribution from the others who participated in the commission of the wrong. *Alseike v. Miller,* 196 Kan. 547, 412 P.2d 1007 (1966); *Rucker v. Allendorph,* 102 Kan. 771, 172 P. 524 (1918). In *Alseike v. Miller, supra,* the Court stated:

> The third parties sought to be joined here are simply alleged joint tortfeasors . . . Contribution being forbidden there is no way in which the third-party defendants are or may become liable to defendant for all or part of plaintiff's claim against defendant. Our 214(a) is identical with the present Federal Rule 14(a).

412 P.2d at 1011.

And, in further amplification of the Kansas view of principles of contribution-indemnification, the *Alseike, supra,* Court said:

> Defendant argues she is not here seeking contribution but indemnification, citing cases among which she says that of *City of Fort Scott v. Pen Lubric Oil Co.* . . . is most applicable . . . These cases are distinguishable in that they involve incidents where the party originally sued was liable regardless of fault, . . . the joint tort feasor aspect is lacking. In the *Fort Scott* case the city was liable for injuries resulting from a defective sidewalk. In that type of case the city may look for indemnification to the third party whose active, primary negligence caused the injury.

412 P.2d at 1012.

■ The Trial Court properly ruled that Liberal was an active rather than passive joint tortfeasor and that, accordingly, the loan receipt agreement, under the teachings of *Cullen v. Atchison, Topeka and Santa Fe Railway Company,* 211 Kan. 368, 507 P.2d 353 (1973) must be treated as covenants not to sue, thus foreclosing Mueller's right to indemnity. *See also, Jacobsen v. Woerner et al.,* 149 Kan. 598, 89 P.2d 24 (1939). It is generally recognized that the party injured may receive from one co-tortfeasor a partial satisfaction of his claim for damages without discharging the other tortfeasors, and in such case it will operate as a discharge pro tanto, as in a covenant not to sue the tortfeasor from whom the partial satisfaction was received. *Cullen v. Atchison, Topeka & Santa Fe Railway Company, supra;* 1 Am.Jur.2d, Accord and Satisfaction, § 9. A release of a joint tortfeasor, as distinguished from a covenant not to sue, is an outright discharge of the entire obligation as to one or all of the alleged joint wrongdoers. *Atlantic C.L.R. Co. v. Boone,* 85 So.2d 834 (Fla.1956); 57 A.L. R.2d 1186.

■ These latter rulings of the Trial Court relative to the covenants not to sue and loan receipt agreements were acquiesced in, abandoned and unchallenged on appeal by Mueller. See "Notice of Appeal" dated December 3, 1974, wherein Mueller appeals . . . "that portion of the order . . . which provides that the third party complaint of . . . Mueller . . . against Liberal . . . is dismissed." [R., Vol. I, p. 33].

Mueller is not entitled to indemnity or contribution from Liberal.

We affirm.